68 U.S. 333
 17 L.Ed. 563
 1 Wall. 333
 BAKER
v.
GEE.
 December Term, 1863
 
 1
 ERROR to the Circuit Court for the District of Missouri, the case being thus:
 
 
 2
 On the 10th June, 1852, Congress, by statute,[1] granted to the State of Missouri, to aid in building railroads from Hannibal to St. Joseph, the right of way through the public lands, and every alternate section designated by even numbers for six sections in width on each side of said roads. The statute directed that 'a copy of the location of the roads, made under the direction of the legislature,' should be forwarded to the proper local land offices and General Land Office at Washington; and that the lands thus given should be disposed of by the State for the purposes contemplated, and for 'no other.'
 
 
 3
 On the 20th September of the same year, the legislature of Missouri, by an act passed to accept the bounty of Congress,[2] required that the lands should be selected by the company, under the direction of the governor, and that a copy of the 'location of the road' should be certified to the local land offices and the General Land Office, in conformity with the act of Congress.
 
 
 4
 One section of the act, the fifth, gave a pre-emption right, at a price specified to settlers in actual occupancy, and who had improved the land occupied, prior to the date of the gift, 10th June, 1852, by Congress; and to a certain extent, on any land embraced in the grant, provided certain conditions were complied with; among which was that the party claiming pre-emption should, 'within four months from the date of the location of the lands,' file, in the clerk's office of the Circuit Court of the county in which the land was situated, a notice to the corporation of the claim. Another section obliged the company, within one year after their road should have been located, to file a map or profile of it, and a map of the land obtained for the use of the road, in the office of the Secretary of State, and have record made of the lands lying in each county in the office for recording deeds. The act and all the grants contained in it were to cease and be void unless the acceptance of the company should within six months be filed in the office of the Secretary of State.
 
 
 5
 On the 23d November, 1857, a further act was passed, making it the duty of the land agents of the road to file, in the different counties through which their road passed, a descriptive list of their lands.
 
 
 6
 The location of the line and route of the road was made on the 8th March, 1853, and the acceptance of the company duly filed with the Secretary of State, on the 17th of the same month; but there was no proof of the time when the lands were actually located, nor any proof that descriptive lists were ever filed in the different counties until after the passage of the act of 1857.
 
 
 7
 In this state of the law and facts, one Gee having entered, in 1849, upon such part of one of the sections as the act of Missouri opened to pre-emption, and complied with the several conditions,—such as occupancy, &c., prior to the gift by Congress, he instituted, on the 3d of January, 1854, the proper proceedings to establish his right to purchase the land. He was denied, however, the right, on the ground that he had not made his claim in due season.
 
 
 8
 In the meantime one Baker purchased the land from the railroad company, and, setting up a title under that purchase, brought the present suit, ejectment, against Gee, to recover the land which the latter claimed by right of pre-emption,—a sort of title which in Missouri is recognized as sufficient to maintain or defend suit in ejectment,—the ground of Baker's claim being that Gee was obliged to show that he gave the notice required by the fifth section of the Missouri act of September 20, 1852, within four months of the location of the road; such location, as Baker contended, having been a location of the lands also; the whole region there having long been surveyed and subdivided by the United States; the sections designated by even numbers already laid down on the public maps; and the location of all the lands granted being made so soon as the railroad itself—which location was the rule and exponent of this also—was definitively fixed and marked on maps by the State. When this was done nothing additional, it was argued, could by intendment be necessary to give precision to the site of the lands, or to render their location more certain or more easy of ascertainment. The court below, however, was not of the opinion, and ruled 'that the location of the land in question by the Hannibal and St. Joseph Railroad Company was not complete, as regarded this defendant, until the said company caused a map thereof to be recorded in the office for recording deeds in which the said land is situated.' Verdict and judgment were accordingly given in favor of the pre-emptor. On error here the correctness of the ruling just mentioned was one point in question; a second point raised and argued being the power of the State of Missouri, under the act of Congress, which gave the lands for railroad purposes and for 'no other,' to open any part of it to pre-emption purchasers.
 
 
 9
 Mr. Gant for the purchaser Baker; and Mr. Krum for the preemptor Gee.
 
 
 10
 Mr. Justice DAVIS, after stating the case, delivered the opinion of the court: The practical question involved in this case is one of easy solution. It is this: 'When did the right of pre-emption, under the fifth section of the act of September 20th, cease?' Manifestly, after four months from the location of the lands. It is argued that Gee's right was at an end if he did not prove his claim within four months from the location of the road. But such a construction would render valueless a wise provision which the legislature of Missouri, in the exercise of an enlightened liberality, had conferred on a deserving class of people. It is not probable that a man whose necessities compelled him to claim the benefits of a pre-emption law, living in an interior county, away from the local land offices, would be correctly informed even of the location of the route of a railroad, and he certainly could not know what lands would belong to the company, unless he knew the exact line the road had taken. And the legislature, in order to render the provision for an actual settler a privilege, and not a delusion, directed the company, within one year after the line of the road was fixed, to have a map of their lands recorded in the different counties through which their road passed.
 
 
 11
 It is said that, owing to the accuracy of the government surveys, whenever the location of one of these land-grant roads is settled, it is an easy matter to ascertain the lands that would belong to it.
 
 
 12
 If the location of the road was always on section lines, it would not be difficult to select the even sections within six miles of each side of the road. But a railroad rarely runs on straight lines. It makes short curves very often, and frequently runs diagonally across sections. It is well known that the General Land Office has encountered great difficulties in making correct selections of the lands which the bounty of Congress has bestowed on the States to aid in works of internal improvement. The selection is not merely mechanical, but requires skill and familiarity with land plats and surveys. On inquiry of the Commissioner of the General Land Office, we learn that in this very case, the descriptive lists of the lands to which the road was entitled, were not approved and signed by the Secretary of the Interior until February 10th, 1854, which was more than a month after Gee filed his claim and accompanying proofs. And to make it more evident that it is not an easy task to make an accurate description of the lands really granted, we learn further that additional lists were afterwards certified to the State, in aid of said railroad, from time to time, and as late as the 15th of November, 1859.
 
 
 13
 It is contended that the legislature of Missouri had no power to grant the privileges of pre-emption. If this was a contest between the United States and the State of Missouri, the question of power would be a proper subject for examination. But the United States are not complaining, and no other party has a right to complain. If the act of the legislature imposed burdens, it nevertheless conferred great privileges, and if any right to object existed, it was waived when the company filed their acceptance with the Secretary of State.
 
 
 14
 It follows that the court below committed no error in holding 'that the location of the land in question by the Hannibal and St. Joseph Railroad Company was not complete, as regards this defendant, until said company caused a map thereof to be recorded in the office for recording deeds in the county in which said land is situated.'
 
 
 15
 JUDGMENT AFFIRMED WITH COSTS.
 
 
 
 [1]
 10 Stat. at Large, 8.
 
 
 [2]
 Session Acts, 1853, p. 15.