THE PACIFIC RAILROAD, Appellant, *v.* LIZZIE McCOMBS *et als.*, HEIRS OF PETER LINDELL, Respondent.

1. *Lands and Land Titles—Railroad Corporations.*—Under the act of Congress of June 10, 1852, granting lands to the State of Missouri for the construction of the roads therein named, and the statute of the State, of December 25, 1852, transferring such grants to the companies therein named, no title to the even numbered sections passed to the corporations until the plats of location of the road were filed in the office of the Secretary of State, and in the offices of the recorder of deeds of the counties in which the lands were situated.

Pacific R.R. v. Lindell's Heirs.

2. *Lands and Land Titles—New Madrid Locations.*—A certificate of location, under the act of Congress of February 17, 1815, for the relief of sufferers by earthquakes in New Madrid, located in 1818, and survey made and returned to the Surveyor General in 1820, but not returned to the Recorder of land titles until 1859, constituted a valid location of the land covered by the survey, and brought the land within the exceptions of the act of Congress of June 10, 1852, granting lands to Missouri for the construction of the roads named in the act.

3. *Lands and Land Titles—Railroad Corporations—Estoppel.*—Under the act of Congress of June 10, 1852, granting lands to the State of Missouri, and the act of the State of December 25, 1852, transferring such grant to the Pacific Railroad, the agent of the company, in estimating the quantity of lands within the exceptions of the granting act, returned sections 8 and 18, T. 45 N., R. 7 E., as included within the exceptions, and selected lands outside of the limit of six miles to make up the quantity of lands to which the company was entitled under the grants, lists of which were certified to the company. *Held*, that by this action the company was estopped from asserting that said sections were not included within the exceptions of the act, although subsequent corrections of the certified lists made at the General Land Office showed that the company had not received all the lands to which it was entitled.

*Appeal from St. Louis Court of Common Pleas.*

This was an action of ejectment to recover possession of part of fractional sections 8 and 18, T. 45 N., R. 7 E., in St. Louis county, which lies within six miles of plaintiff's road.

At the trial, plaintiff's title was as follows:—Act of Congress of June 10, 1852, granting to the State of Missouri the even numbered sections within six sections in width on each side of said road—10 U. S. Stat. 802; and act of Missouri of December 25, 1852, transferring this grant to the plaintiff—Acts 1852-3, p. 10, § 1.

Evidence was then given to show that the railroad ran through the centre of T. 45 N., R. 7 E., and that the lands sued for were within six sections of the road; that the plats of the location of the road had been duly filed at the General Land Office, in the district land offices, with the Secretary of State, and in the Recorder's office for St. Louis county, as required by the statutes.

The defendants' title rested upon a New Madrid location certificate, in the name of Joseph Hunot's legal representa-

tives, No. 161, issued August 12, 1818; (a survey was made in 1821, but was not returned to the Recorder of land titles;) survey made and recorded May 22, 1859, and returned to Recorder of land titles May 23, 1859; Patent of United States dated August 30, 1859, issued after suit begun; act of Congress of June 30, 1864; and Private Acts of 1863-4, p. 7, relinquishing title of United States to Joseph Hunot and other New Madrid locations, saving all adverse rights.

The land sued for interfered with some lots confirmed in Grand Prairie common field. Plaintiff waived all claim to such lots, and admitted that defendant had the Hunot title and had held possession under it since 1829.

The case was tried by the court as the questions presented were all questions of law, and turned upon record evidence almost entirely.

The instructions given by the court declared that the plaintiff had the better legal title and would have been entitled to recover, but was estopped by its own acts from setting up title to the land. The supposed estoppel originated in the following manner:—By the act of Congress of June 10, 1852, § 2, in case any of the even numbered sections within six sections of the road had been previously sold or granted by the United States, or the right of pre-emption had attached thereto, then the Governor of the State might appoint an agent to select other lands, if vacant, and within fifteen miles of the railroad, when located, in lieu of such even numbered sections, within six miles, which had been granted or sold. After the State had transferred its grant to the plaintiff, the Governor appointed an agent to select land in lieu of those granted. After the return of the plat of the location of the road to the General Land Office, an estimate was then made as to the quantity of land to which the State was entitled within six miles:

Lands supposed to be vacant................................Acres, 766,149.08
Lands supposed to have been sold........................... " 395,040.97

Total of lands to which Pacific Railroad was entitled, Ac. 1,161,235.07

In making this estimate, sections 8 and 18 of T. 45 N., R. 7 E., sued for, were considered as having been sold in making up the list of lands.

The Commissioner of the General Land Office, under the acts of Congress of June 10, 1852, and August 3, 1854 (10 U. S. Stat. 346), issued to plaintiff a list of the lands supposed to have been granted by the act of June 10, 1852, within six miles of the road, and another list of the lands selected:

Within six-mile limit........................................ ...... Ac. 762,536 75
Within fifteen-mile limit ...................................... Ac. 395,232.18

In 1854, additional lists were issued:

Within six-mile limits................................................ Ac. 1,743.24
Within fifteen-mile limits............................................ Ac. 1,785 63

Had these lists been correctly made out and no errors discovered, the Pacific Railroad would have had certified to it the quantity of land to which it would have been entitled; but a subsequent examination of the lists showed that some of the lands certified had been previously entered, or pre-emptions had attached; and the Land Department, after these errors had been corrected, found that the Pacific Railroad had not received all the lands to which it was entitled, and that it was still entitled to $3,162\frac{53}{100}$ acres to make up the quantity granted by the United States. The lists when corrected stood as follows:

Original six-mile list.............. .................. 761,589.97
Additional " "  ................................. 946.78
                                                                    762,536.75
Original fifteen-mile list ........................... 393,793.59
Additional " "  .......................... 1,743.20
                                                                    395,536.79

                                                       Ac. 1,158,073.54
                        Balance ................................ "      3,162.53

                 Total granted by the act......... Ac. 1,161,236.07

The plaintiff, therefore, had not virtually received all the land to which it was entitled, and had not received it at the time of the trial.

The suit was commenced January 22, 1859.

The following instructions were given for plaintiff:

1. The act of Congress of June 10, 1852, granting lands to the State of Missouri, and the act of the General Assembly of December 25, 1852, conveyed to the Pacific Railroad the alternate sections of land, designated by even numbers, for six sections in width on each side of the Pacific railroad, commencing at the city of St. Louis and running westwardly to the boundary of the State, on the line of the definite location of said road, excepting lands previously sold or to which the right of pre-emption had attached. If, therefore, the jury find from the evidence that the premises sued for, to-wit, fractional sections eight and eighteen of township 45 N., R. 7 E. of 5th P. M., are within the distance of six sections of the Pacific railroad as located and built through said township 45 N., R. 7 E., then the plaintiff has shown a legal title to so much of said sections eight and eighteen as are south of U. S. Surv. No. 2620 in the name of Delisle and without the U. S. surveys Nos. 1663, 1664, 1665, 1813, 1814, 1340 and 3052, and is legally entitled to recover the possession of said premises with the rents and profits thereof from the commencement of this suit, unless said plaintiff has selected other lands in lieu of said sections eight and eighteen.

2. If the plaintiff has not selected the full quantity of land to which it would be entitled under said act of Congress, the plaintiff is not estopped from claiming said fractional sections eight and eighteen although the plaintiff and the United States may have supposed that said sections had been sold or disposed of. The court gives this instruction, No. 2, with this addition, that if the plaintiff selected the full quantity of land it was entitled to, and the Secretary of the Interior approved such selection, and that such selection included lands taken in lieu of the sections parts of which are sued for, and that these sections and the Secretary's approval of them stood upon the records of the Commissioner of the General Land Office and in the office of the plaintiff at the time the patent was issued under which defendants claim, the

plaintiff could not after the said patent was issued change the said selections, on account of any alleged errors or omissions, so as to affect or impair the defendant's title.

3. The defendant claiming under patent in the name of Joseph Hunot and the U. S. survey thereof No. 2500, offered in evidence by the defendant, shows no title that can avail against the legal title of the plaintiff, if the jury believe as in the first instruction given for the plaintiff.

4. The patent to Joseph Hunot dated August 30, 1859, shows no title in the defendants of a date older than the date of the patent, and the recitals in said patent afford no legal evidence to show a title of a date older than the patent against the claim of the plaintiff claiming under the act of Congress of June 10, 1852.

Plaintiff's instruction refused:

5. The plaintiff is not estopped from claiming said fractional sections 8 and 18, or so much thereof as lies outside of the Grand Prairie common fields, by the fact that the railroad company and the land office at Washington, laboring under a mutual mistake, treated said land as sold or disposed of by the United States in fact, if in fact said land had not been sold or disposed of, unless the plaintiff has actually selected and received all the lands to which it was entitled under said act of Congress of June 10, 1852; and the plaintiff has not received all the lands to which it was entitled if it appear that the even numbered sections of lands within six miles were certified as unsold and vacant, or that any of the lands selected in lieu of lands sold had been previously sold, and that, to correct the errors thus made, the plaintiff is still entitled to select a large quantity of lands under its grant.

Defendants' instructions given:

1. If the court finds from the evidence that the selections of all the lands to which the Pacific Railroad company was entitled under the grant of 10th of June, 1852, were made and completed in the year 1854, and that the same were duly certified to the railroad company in two lists, called the

six-mile list and the fifteen-mile list ; and that supplemental lists were made, closing up the account for the balance of the lands claimed by the agent of the State and the agent of said railroad in the same year; and if the court further finds from the evidence that the lands sued for in this section were not claimed, marked, or designated on said lists, or either of them, and that other lands were selected by the authorized agent of said railroad company in lieu of the lands sued for, then the court will find for the defendants.

2. If the original lists and supplemental lists of land selected by the authorized agent of the plaintiff and of the State included all the acres of land to which the plaintiff was entitled, and the land sued for was not selected, and other lands in lieu thereof were selected for said plaintiff by the agent of the plaintiff under the grant of June 10, 1852, then plaintiff cannot recover.

3. If the court find from the evidence that the New Madrid location and survey and patent certificate for the Hunot location have appeared upon the records of the Surveyor-General's office, and of the Recorder of land titles from the dates of said documents up to the time the plaintiff selected its land under the act of June 10, 1852, and that other lands were selected by the plaintiff or its agent in lieu of the said Hunot New Madrid claim, then the plaintiff cannot recover.

To the qualification given by the court to the plaintiff's second, and the refusal of the fifth instruction, and the instructions given for defendants, plaintiff excepted.

*Whittelsey*, for appellant.

From the record it will be seen that the Common Pleas decided this case against the plaintiff upon the doctrine of estoppel, after deciding by its instructions that the plaintiff had the better legal title by its grant of June 10, 1852.

I. The New Madrid location of Joseph Hunot not having been located within one year after the passage of the act of Congress of April 26, 1822 (1 Land Laws, 344), was void— Easton v. Salisbury, 21 How. 426, 431 ; State v. Gaines, 22 How. 144.

The location is made only by the return of the official survey by the Surveyor-General to the Recorder of land titles—Bagnall v. Broderick, 13 Pet. 436; Cabanné v. Lindell, 12 Mo. 124; Lessieur v. Price, 12 How. 59.

The recitals in the patent issued in 1859 were no evidence as against the plaintiff, claiming under act of June 10, 1852, of the facts therein recited to show a title older than the patent—Marsh v. Brooks, 8 How. 223; Kennett v. Plummer, 28 Mo. 142.

II. The location having been made when forbidden by law, the patent was void and passed no title from the United States—Easton v. Salisbury, 21 How. 426, 431, which was a case of a patent declared void; Wilcox v. McConnell's Lessee, 13 Pet. 511; Stoddard v Chambers, 2 How. 284, 317; Hale v. Gaines, 22 How. 155.

At the commencement of this suit the defendant had no legal title by or under which he could defend this suit—Holmes v. Fenn, 21 How. 481; Stoddard v. Chambers, 2 How. 284; Stoddard v. Mills, 8 How. 345; 20 Mo. 108; 17 Mo. 31; Bissell v. Penrose, 8 How. 317.

The defendant, therefore, had no legal title under which to defend or under which he could claim the benefit of any estoppel until the passage of the act of Congress of June 30, 1864. As his location was void, as above shown, he had neither an equitable nor a legal title until that date.

III. The defendant having neither a legal or equitable title at the commencement of the suit, nor until June 30, 1864, he was not in a condition to set up an estoppel as against the plaintiff—Sarpy v. Papin, 7 Mo. 563; Willot v. Sandford, 19 How. 79.

(a) The act of Congress of June 10, 1852, was a complete grant of the even numbered sections within six sections of the road as located, unless some legal or equitable right and title as against the United States had attached thereto prior to the grant—10 U. S. Stat. 8, § 2.

As above shown, there was no legal or equitable title to said land in any one in 1852 except the United States, and the grant was therefore a complete grant to the State of Mis-

souri, and that title passed to the plaintiff December 25, 1852. The defendant had no title until June 30, 1864, and before that date (in 1863) the United States had made corrections in the certified lists of lands showing that the plaintiff had not received all the lands to which it was entitled, and that both parties had labored under a mistake. The defendant, claiming by a subsequent grant in 1864, cannot complain of the action of the United States. As to the effect of a mistake upon an estoppel, see Knowlton v. Smith, 36 Mo. 507.

(b) The court below gave to the erroneous certification of the lists made by the Commissioner of the General Land Office a greater effect than the act of Congress of August 3, 1854 (10 Stat. U. S. 346), for that act made such lists null and void as to all lands not granted or not intended to be granted; that is, as to all lands to which legal or equitable rights had attached as against the United States. That act only applied to cases where the fee simple did not or had not passed by the granting statute. But in this case the act of June 10, 1852, was a complete grant of itself to the even numbered sections on each side of the road. The words are, " that there be and is hereby granted to the State of Missouri," &c. As soon therefore as the road was located and the plats of location of road were filed in the General Land Office and the local offices, the title attached at once to the even numbered sections on both sides of the road, unless the United States had sold or granted the land, or a right of pre-emption had attached thereto under some act of Congress. As the United States, therefore, were not estopped in 1863 at the time the lists were corrected, and the parties in interest (to-wit, the United States and the plaintiff) agreed to the corrections, the defendant claiming under a title of subsequent date cannot object nor claim the benefit of an estoppel which his grantor could not and did not claim. There would be no mutuality in the estoppel.

Plaintiff was not estopped at the commencement of the suit; the defendant had no title whatever until June 30,

1864, and at least had a right to the rents and profits up to that date.

The United States were not estopped by the certified lists referred to in the instructions and given in evidence, for by the act of Congress of 1854 said lists were only *prima facie* evidence of grant, as the lists had no validity unless the title to the land really passed by them. Said lists were no evidence of estoppel against the United States in A. D. 1863, and defendant, who had no title until 1864, cannot set up an estoppel against his grantor, the United States : he is privy with the United States, and is bound by the acts of its public officers.

*B. A. Hill,* for respondents.

I. The finding of the court, sitting as a jury, is conclusive on the evidence that the plaintiff selected the full quantity of land it was entitled to, that the selections were approved, and that the selections included lands taken in lieu of fractional secs. 8 and 18, and so appeared on the records of the General Land Office and in the office of the plaintiff at the time the patent was issued to defendant in 1859. This operates as an estoppel against the plaintiff claiming frac. secs. 8 and 18—State to use of Town. 44 v. Dent, 18 Mo. 315 ; Dalzell v. Odell, 3 Hill, N. Y.

II. The New Madrid location by legal representatives of Jos. Hunot in 1818, the U. S. survey in 1819, the return of survey to Recorder of land titles in 1833, operated to reserve the land from sale or pre-emption after that date, although the proceedings may have been irregular and inoperative to pass the legal title to the New Madrid claimant—Act of 17th Feb., 1815, 3 Stat., p. 211, §§ 1–3 ; Act of 20th April, 1822, §§ 1–2, 3 Stat. 668 ; Act of 2d March, 1831, §§ 1–2, 4 Stat. 482 ; Brightley's Dig. 558, & 476, § 104.

III. It has been the uniform rule of the Land Office to hold all lands covered by Spanish grants confirmed or in course of proceedings for confirmation, and by New Madrid locations perfected or not perfected into patents, as reserved

from sale or entry or pre-emption.—See Acts of 1812 and 1836 establishing General Land Office, and the opinions and instructions of the Attorneys General, particularly Mr. Wirt, 2 Land Laws, and instructions, pp. 9–13.

IV. The 2d section of the act of June 10, 1852, grants to the State for the making of the Pacific and Hannibal and St. Jo. railroads the alternate even numbered sections for six sections in width on each side of the road; but if any of the land thus granted has been sold or pre-empted, then the State has the power and right to select other lands in lieu thereof, most contiguous to the six-mile tier of sections granted. In the last clause of this second section it is "provided further, that any and all lands heretofore reserved to the United States by any act of Congress, or in any other manner by competent authority, for the purpose of aiding in any object of internal improvement, or for any other purpose whatsoever, be and the same are hereby reserved to the United States from the operation of this act, except so far as it may be found necessary to locate the route of the said railroads through such reserved lands, in which case the right of way only shall be granted."

It is clear that all lands reserved for any purpose whatsoever, either by act of Congress or in any other manner by competent authority, are excepted out of the operation of the granting clause of said act of 10th June, 1852. Now these two fractional sections 8 and 18 were reserved by the acts of Congress to satisfy the New Madrid location of Joseph Hunot, and also to satisfy the Spanish concessions in the south part of the Grand Prairie fields of St. Louis granted 13th June, 1812.

We might safely rely upon the entries in the records of the General Land Office to show that the tribunal having competent authority had reserved both these sections to satisfy private claims. It is so certified officially.

The Commissioner of the General Land Office has jurisdiction over these New Madrid claims and locations, and all other private claims—Act 4th July, 1836, § 11, 5 Stat. 107,

& § 1 ib. ; Brightley's Dig. 462 ; Magwire v. Tyler, 1 Blk. 195. The Commissioner is specially named as the officer having supervising control over New Madrid locations—Act of 17th February, 1815, § 3, 3 Stat. 211.

V. These fractional sections 8 and 18 were therefore not subject to the grant of 10th June, 1852, but they were expressly reserved from passing by the granting clause of the act. And as the plaintiff, acting under the instructions of the Commissioner of General Land Office and the Secretary of the Interior, has, under ample powers granted to plaintiff by the General Assembly of this State (act of 1852, p. 10), selected and accepted other lands in lieu of full sections of 640 acres each for fractional sections 8 and 18 in T. 45 N., R. 7 E., and the Secretary of the Interior having approved the selections, the plaintiff has no right to claim these sections at all.

State to use of Town. 44 v. Dent, 18 Mo. 315, is a case very similar to this in fact, and in principle exactly like it, except that under the acts of 1820 and 1823 granting 16th sections for schools, there is not so broad a reservation as in the act of 10th June, 1852, for the railroad.

VI. The lands in sections eight and eighteen being reserved from the grant to the State for the use of railroads by competent authority, the patent of 1859 to Peter Lindell, legal representative of Hunot, passed all the title of the United States by estoppel, whether such patent was or was not in strict conformity to the preceding requirements. No other grant having been made by the United States to any other person or corporation, the plaintiff cannot be heard here to impeach the said patent in a collateral action of ejectment. As the land was reserved by competent authority for the satisfaction of private claimants, the plaintiff has no standing in court under the act of June 10, 1852.

VII. The patent to Joseph Hunot's legal representatives is not void as against the United States unless the plaintiff can show a previous grant from the United States to the State of Missouri for railroad purposes for the same land.

HOLMES, Judge, delivered the opinion of the court.

The plaintiff claims title under the second section of the act of Congress of the 10th of June, 1852—10 U. S. Stat. p. 9. This act granted to the State of Missouri, for the purpose of aiding in making certain railroads, every alternate section of land designated by even numbers, for six sections in width on each side of said road, which section, or any part thereof, should not appear to have been sold or subjected to the right of pre-emption, and provided that no reservation of any or all of said lands by any act of Congress, or in any other manner, by competent authority, for any purpose whatever, has been made; but in case such sale, right of pre-emption, or reservation, did appear, then the agent of the State appointed by the Governor was to select, subject to the approval of the Secretary of the Interior, other lands elsewhere in lieu thereof, as further therein provided. It seems to have been left to the agent of the State to ascertain for himself what sections or parts of sections had been sold, pre-empted, or reserved.

The State of Missouri, by an act of the General Assembly of the 25th of December, 1852, (Laws of 1853, p. 10,) granted to the Pacific Railroad company so much of these lands as were applicable to the Pacific railroad, and required the company to proceed as soon as practicable to locate the railroad, and to locate and select the lands granted by said act of Congress, by an agent, to be designated by them, and appointed by the Governor. A copy of the location was to be forwarded to the local land officers and to the General Land Office. They were to cause a map and profile of the road, and a map of the land located, to be filed in the office of the Secretary of State, within one year after the location of the road; and maps of the parts thereof, located in different counties, were to be recorded in the office of the recorder of deeds in each county respectively.

The plaintiff produced evidence tending to show that this map and profile of the location of the railroad had been

made and filed; but no evidence was offered to show that any map of the lands located, including the land in controversy here, had ever been filed with the Secretary of State; nor that any map of the parts thereof, located in the county of St. Louis, had ever been recorded in the office of the recorder of deeds therein.* The only evidence offered to prove that the particular sections or parts of sections which are sued for in this case were any part of the granted premises, was a certified plat from the office of the Surveyor General, showing sections eight and eighteen in T. 45 N., R. 7 E., in the county of St. Louis. The plat and profile of the location of the railroad did not show the numbers of the sections, and the plaintiff contends that the act of Congress acted directly as an absolute grant of all the even numbered sections within six miles on either side of the located road, and that no other evidence than the official sectional further surveys was necessary to ascertain the particular lands granted.

This point has been expressly decided otherwise—Baker v. Gee, 1 Wall. U. S. 333; Hamilton & St. Jos. R.R. Co. v. Moore, 37 Mo. 338. The act of the General Assembly has reference, more especially, perhaps, to the protection of the rights of such persons as should, under the provisions of that act, become pre-emptors and purchasers of the lands thus granted to the State. The defendants are claiming here as purchasers from the United States, and not as pre-emptors under the statute. But the grant to the State is transferred to the railroad company, accompanied with all the restrictions of this legislation on the part of the State, defining the powers and duties of the agent. The statute amounts to a legislative interpretation of the meaning and extent of the act of Congress; and it supposes, as that act

---

* There is here an error of fact. The plat of the location of the road through the county of St. Louis was duly recorded, and a certified copy from the record was in evidence, and this was not questioned in the court below. See statement.

itself would seem to do, that it was left to the agent of the State to ascertain for himself and on his own part, what lands were excepted out of the grant. The agent was designated by the corporation and commissioned by the Governor, and thus became the agent both of the State and the company, for this purpose, under the act of Congress. Both the act of Congress and the statute suppose that the agent will select and locate the particular sections and parts of sections that fall within the granted premises; and the statute requires that a descriptive list of the lands selected shall be filed with the Secretary of State, and that a map of the lands located in different counties shall be recorded in the office of the recorder of deeds therein; and the act of Congress requires that a descriptive list of the lands selected in lieu of those sold, pre-empted or reserved, shall receive the approval of the Secretary of the Interior.

And it was held in Baker v. Gee that the location of the land was not complete, as regarded the rights of the pre-emptor under the statute, until the company had caused that map to be recorded in the office for recording deeds in the county where the lands were situated. The point was distinctly made in that case, as it is here, that the granted sections, or parts of sections, were sufficiently ascertained and designated by the even numbers of the public sectional surveys alone, and it was expressly decided that they were not.

In the case of the Hann. & St. Jo. R.R. Co. v. Moore, it was said that the act of Congress and the statute amounted to a legislative grant of the specific lands whenever they should be particularly ascertained and designated. The location of the railroad was to be made by the corporation, and would ascertain the six-mile limit within which the even numbered sections were to be found.

The public sectional surveys would ascertain what sections were designated by even numbers within that limit. The admission of the answer identified the land sued for as

a part of one of those sections, and the descriptive list approved by the Secretary of the Interior, and recorded in the office of the recorder of deeds in the county where the lands were situated, was held to be *prima facie* evidence, at least, that the lands therein designated came within the grant. The court was not then aware of the decision in Baker v. Gee, which, so far as there may be any conflict, may be taken as the higher authority, but on the question in hand there is no conflict between the two decisions. We are of the opinion, therefore, that the evidence did not show any grant to the plaintiff of the specific lands in controversy.

In accordance with the decision in Gibson v. Chouteau,* (Oct. T. 1866,) we are of opinion that the evidence produced by the defendants tended to show a valid location made in 1833, covering this land, under the act of Congress of the 17th of February, 1815, for the relief of the sufferers by earthquakes in New Madrid, and that the land had been appropriated by Congress to answer that location, and pass, therefore, within the reservation of the act of Congress of the 10th of June, 1852.

It appears that the agent of the corporation and the State proceeded to perform the duty assigned to him under these laws, and finding to his satisfaction, and by an official communication from the Commissioner of the General Land Office that these particular sections, and parts of sections, among other lands in St. Louis county, had already been disposed of, within the meaning of the act of Congress, and were not part of the granted premises, he selected and made a list of these lands elsewhere in lieu thereof, which had the approval of the Secretary of the Interior. But it was afterwards discovered, it seems, that some of these other lands, so selected elsewhere, were not subject to location and sale under the act of Congress, and that, upon the necessary corrections being made, there still remain a certain portion

---

* Re-hearing granted and decided at March Term, 1867.

of the whole quantity granted, to be selected and located in some other place, within the limits prescribed by the act. It does not appear, however, that the lands in controversy had ever been selected or located as a part of that residue.

This action must be considered binding and conclusive upon all the parties as to that matter. It amounted to a solemn admission that these lands were not included within the grant, and were not included within the reservation, and it was a formal disclaimer on the part of the agent of all right to select and locate them as a part of the granted premises. The officers of the Land Department may be considered as representing the interests of those who were entitled to this reservation or exception. The defendants proceeded to consummate their equitable right into an actual patent for these lands. The admission was acted upon by all parties concerned. It is not important that the admission was not made to the defendants in person. Being an open and public act, it is to be considered as addressed to every one who had occasion to act upon it. As against this party, neither the agent nor the plaintiff can now be heard to deny the truth of this admission. Whether the fact were true or false, they are concluded by their own act and acceptance to say the truth; and it may very well be deemed to have amounted to an *estoppel in pais*—1 Greenl. Ev. §§ 207–8; 4 Com. Dig., tit. Estoppel, *a.* 1; Dalzell v. Odell, 3 Hill. 215; State v. Dent, 18 Mo. 313.

We conclude, therefore, that the defendants' instructions were properly given; and whatever error there may have been in giving or refusing the plaintiff's instructions, it was either not material, or not such as the plaintiff is entitled to complain of.

The judgment will be affirmed; the other judges concur.