## FUNKHOUSER, *Appellant* v. PECK.

1. **Lands and Land Titles**: SWAMP LANDS: SELECTION OF: PAROL EVIDENCE TO IDENTIFY. Where title to land in controversy is deraigned under the act of Congress of Sept. 28th, 1850, entitled "An act to enable the State of Arkansas and other States to reclaim the swamp lands within their limits," parol testimony is admissible to show that such land was not swamp land within the meaning of the act, unless it has been included by the Secretary of the Interior in the lists and plats of swamp lands certified by him to the State, or had remained vacant and unappropriated until the confirmatory

act of March 3d, 1857, and had, prior to that date, been selected and reported to the commissioner of the general land office, as swamp and overflowed lands; and the fact that the land was selected and reported by the county commissioner to the register of lands, and by the surveyor general to the commissioner of the general land office, who, after suit brought, granted his certificate that certain lists of swamp lands, including the land in controversy, were true and literal copies of the original swamp land selections on file in his office, is not evidence that the Secretary of the Interior had ever certified the land as swamp land to the State. (*Clarkson v. Buchanan* 53 *Mo.* 563, *distinguished.*)

2. ———: ACTS OF CONGRESS OF JUNE 10TH, 1852, AND OF AUG. 3D, 1854, IN AID OF THE CONSTRUCTION OF. RAILROADS IN THIS STATE, WHAT CONFERS TITLE UNDER: ACT OF MARCH 3D, 1857, WHAT NOT VACANT AND UNAPPROPRIATED LAND WITHIN ITS MEANING. Under the act of Congress of June 10th, 1852, entitled "An act granting the right of way to the State of Missouri, and a portion of the public lands to aid in the construction of certain railroads in said State," and the act of Congress entitled "An act to vest in the several States and Territories, the title in fee of the lands which have been or may be certified to them," approved Aug. 3d, 1854, a descriptive list of lands accruing to the State under the former act, containing the land in controversy, made out and certified on the 9th of Feb., 1854, by the commissioner of the general land office, and approved by the Secretary of the Interior, and again certified in May, 1856, by said commissioner, in conformity with the latter act, confers upon the State a title to the land in controversy, unless it be swamp land or embraced in some other grant; such land was not vacant or unappropriated within the meaning of the act of March 3d, 1857, entitled "An act to confirm to the several states the swamp and overflowed lands selected under the act of Sept. 28th, 1850," &c. *Pacific Railroad v. Lindell's heirs*, 39 *Mo.* 329 *distinguished.*

3. **Ejectment**: SWAMP LANDS: RAILROAD LANDS. When the plaintiff's claim to the land in controversy, in an action of ejectment, is founded on the swamp land grant of Congress of September 28th, 1850, he cannot recover if it appears that the land is, in point of fact, high and dry, rolling prairie, and has never been selected as swamp land by the proper officers of the general government, notwithstanding the defendant, who claims under the railroad land grant of Congress of June 10th, 1852, fails to show that the railroad company either had· built its road into the county where the land lay, when it was selected by the company, or had recorded a map of the lands selected in the proper county as received 'by the act of the State Legislature of September 20th, 1852.

*Appeal from Clinton Circuit Court.*—HON. GEORGE W. DUNN, Judge

*Joseph M. Lowe* for appellant.

1. By the act of Sept. 28th, 1850, the power to de-. termine what land should be certified as swamp land was given to the Secretary of the Interior. He speaks and acts through the heads of the various departments under his control, and did, by his subordinates, designate the land in controversy as swamp land. The court below, therefore, committed an error in permitting the decision to be impeached in this collateral proceeding, and that too, by oral testimony. *Wilcox v. Jackson*, 13 Pet. 498, 513 ; *United States v. Arredondo*, 6 Pet. 730 ; *Campbell v. Doe*, 13 How. 249 ; *Greer v. Mezer*, 24 How. 276 ; *Lafayette's heirs v. Kenton*, 18 How. 199 ; *Stanford v. Taylor*, 18 How. 412 ; *West v. Cochrane*, 17 How. 415 ; *Lessieur v. Price*, 12 How. 448 ; *Minter v. Crommelin*, 18 How. 87 ; *United States v. Peralta*, 19 How. 347, 343 ; *McClung v. Sillman*, 2 Wheat. 369 ; *McIntire v. Wood*, 7 Cranch 504 ; *Delassus v. United States*, 9 Pet. 134 ; *Lea v, Polk Co. Copper Co.*, 21 How. 497 ; *Rutherford v. Greene*, 2 Wheat. 197 ; *Fore v. Williams*, 35 Miss. 533 ; *Clarkson v. Buchanan*, 53 Mo. 563 ; *Campbell v. Wortman*, 58 Mo. 258 ; *French v. Fyan*, 3 Otto, 169.

2. Respondent failed to show that the company had, prior to March 3d, 1857, filed a list of its lands in the office of the rocorder of the county where the land in controversy lies ; and there was no evidence that the company had ever filed or had recorded in said recorder's office, any map of its lands, or map or profile of the part of its road located in said county. *Han. & St. Jo. R. R. Co. v. Smith,* 41 Mo. 335 ; *Pacific R. R. Co. v. Lindell,* 39 Mo. 329.

*James Carr* for respondent.

1. The land in controversy was not swamp or over-

flowed land on the 28th day of Sept., 1850, or at any other time, either prior or subsequent thereto. The State never had any claim to this land under the act of Congress of that date. It did not come within either the letter or spirit of that act. 9 U. S. Stat. at large, p. 519.

2. When the map of the definite location of the Han. & St. Jo. R. R., was filed in the office of the commissioner of the general land office, on the 10th day of June, 1853, *eo instanti* the title to every section of land designated by even numbers for six sections in width on each side of said railroad, became vested in said company, as of the 10th day of June, 1852, by relation, under the act of Congress of that date (10 U. S. Stat. at large, p. 9,) and the act of the General Assembly of this State, approved Sept. 20, 1852, (Sess. acts, p. 15,) just as, by relation, the title becomes vested by the sheriff's deed in the purchaser at a sheriff's sale, as of the day of the rendition of the judgment, under which the sale was made. *Lessieur v. Price*, 12 How. 60; *Strother v. Lucas*, 12 Pet. 454; *Rutherford v. Greene's heirs*, 2 Wheat. 196; *Ham v. Missouri*, 18 How. 130; *Cooper v. Roberts*, 18 How. 177; *Gaines v. Nicholson*, 9 How. 356; *U. S. v. Brooks*, 10 How. 442; *Guitard v. Stoddard*, 16 How. 508.

3. The same rule applies to the lands situated within the six and fifteen mile limits, as soon as they are selected and approved by the Secretary of the Interior. *Glasgow v Hortiz*, 1 Black 595; Yosemite Valley case, 15 Wall. 77; *Schulenburg v. Harriman*, 21 Wall. 44.

4. This court has twice held that when swamp lands had been certified to the Han. & St. Jo. Co., by the commissioner of the general land office, under the act of June 10th, 1852, the party claiming title thereto, under the act of Sept. 28th, 1850, might introduce parol evidence that the lands were swamp in fact, and thus rebut the *prima facie* legal title of the company. A rule, to be good, ought to work both ways, and parol evidence was admissible to show that the land in controversy was not swamp land in

fact.   *H. & St. Jo. R. R. Co. v. Smith*, 41 Mo. 310 ; *Railroad Company v. Smith*, 9 Wall. 95 ; *Clarkson v. Buchanan*, 53 Mo. 563.

Hough, J.—This was an action of ejectment, instituted on the 8th day of November, 1873, to recover the possession of lots numbered one and two, in block numbered thirty-four, in the town of Lathrop, the same being a part of the n. e. qr. of the s. w. qr. of section 25, T. 55, R. 31, situate in Clinton county.   The plaintiff claimed title under the following acts of Congress and laws of Missouri, to-wit :   *First.*   The act of Congress, entitled "An act to enable the State of Arkansas, and other States, to reclaim the swamp lands within their limits," approved September 28th, A. D. 1850.   (9th U. S. S. at Large, p. 519.)   *Second.* The 1st, 2nd, 3rd and 4th sections of the act of the General Assembly of the State of Missouri, entitled "An act donating certain swamp and overflowed lands to the counties in which they lie," approved March 3rd, 1851.   (Sess. Acts 1851, 238, 239.)   *Third.*   The act of Congress, approved March 3rd, 1857, being an act entitled "An act to confirm to the several States the swamp and overflowed lands selected under the act of September twenty-eighth, eighteen hundred and fifty ; and the act of the second of March, eighteen hundred and forty-nine."   (11 U. S. S. at Large, 251.)   *Fourth.*   An act of the General Assembly of Missouri, approved November 4th, 1857, being an act entitled "An act amendatory of an act entitled 'An act donating swamp and overflowed lands to the counties in which they lie, approved December 13th, 1855.'"   (Sess. Acts 1857, 32.)

Plaintiff read in evidence :   *First.*   An order of the county court of Clinton county, Missouri, made on the 4th day of August, 1853, appointing John T. Johnson, swamp land commissioner, to make selection of swamp lands of said county.   *Second.*   The certificate of the Register in Lands of Missouri, that the land in controversy was select

ed by said commissioner, on the 15th day of August, 1853, and that the list containing the same was reported to, and filed by the Secretary of State, on the 25th day of August, 1853. *Third.* "Additional list of swamp and overflowed lands, in the Plattsburg district, county of Clinton," containing the lands in question, to which was appended a certificate of the Surveyor-General for Illinois and Missouri, dated May 23, 1854, to the effect that he had carefully examined the same with the field notes, township plats and other evidences on file in his office, and was satisfied that the greater part of each forty acre tract, or other equivalent legal subdivision embraced in said list, was swampy or subject to overflow, within the meaning of the act of Congress of 28th September, 1850, and that said lands rightfully inured to the State of Missouri under said act.

Accompanying the foregoing was the following certificate:

DEPARTMENT OF THE INTERIOR, GENERAL LAND OFFICE, }
          WASHINGTON, D. C., Dec. 30th, 1873. }

I, W. W. Curtis, Acting Commissioner of the General Land Office, do hereby certify that the annexed papers marked A and B, are true and literal copies of the original swamp land selections on file in this office, so far as the same relates to     *     *     *     *     s w qr of Sec. 25, T. 55, R. 31.     *     *     *     *     In testimony whereof, &c.

Also, the following:

OFFICE OF REGISTER OF LANDS, }
          JEFFERSON CITY, Mo., May 12, 1875. }

This is to certify that the foregoing is a true and correct copy of a certified copy made December 30, 1873, at the General Land Office, of an additional list of swamp and overflowed lands in the Plattsburg district, Mo., which certified copy is on file in this office.

[L. S.]                              GEORGE DEIGEL,
                                        Register of Lands.

*Fourth.* Certified copies of letters from the Commissioner of the General Land Office to the Surveyor-General, containing instructions and rules of the land department, with reference to selecting and certifying swamp lands, the contents of which it will not be necessary to state. *Fifth.* The order of the county court of Clinton county, for the sale of the land in controversy. *Sixth.* The sheriff's report of sale, and the order of the county court approving the same, and appointing a commissioner to make a deed to plaintiff. *Seventh.* Deed executed to plaintiff by said commissioner, dated September 6th, 1873, conveying the land in controversy.

The defendant claimed title under an act of Congress entitled "An act granting the right of way to the State of Missouri, and a portion of the public lands to aid in the construction of certain railroads in said State," approved June 10th, 1852; also, an act of the General Assembly of the State of Missouri, entitled "An act to accept a grant of land made to the State of Missouri by the Congress of the United States, to aid in the construction of certain railroads in this State, and to apply a portion thereof to the Hannibal & St. Joseph Railroad," approved September 20th, 1852; also, an act of Congress entitled "An act to vest in the several States and Territories the title in fee of the lands which have been or may be certified to them," approved August 3d, 1854.

The defendant offered in evidence : *First.* A copy of the resolution of the Board of Directors of the Hannibal & St. Joseph Railroad Co., adopted on the 7th day of March, 1853, accepting the grant of land made to the State of Missouri by the Congress of the United States, filed in the office of the Secretary of State on the 17th day of March, 1853. *Second.* An exemplified copy of the map of the definite location and route of the Hannibal & St. Joseph Railroad, from the city of Hannibal to the city of St. Joseph, Missouri, with a line on same denoting the line of said railroad, and with lines and figures on the same

denoting the sections, townships and ranges, which was duly certified by the president and chief engineer of the Hannibal and St. Joseph Railroad Company, and filed in the office of the Commissioner of the General Land Office, on the 10th day of June, 1853.    *Third.*    A list of lands certified to the  Hannibal & St. Joseph Railroad Company by the Commissioner of the General Land Office, to which is prefixed the following caption : " Hannibal & St. Joseph Railroad."    A list of vacant lands situated in the Palmyra, Fayette, Milan and Plattsburg districts, State of Missouri, in the sections bearing *odd* numbers, between the *six* and *fifteen* mile limits on  each side of the route of the Hannibal & St. Joseph Railroad, selected in lieu of lands sold and pre-empted and accruing to said State in virtue of the grant made by the act of Congress, approved 10th June, 1852, as more particularly set forth in the  general certificate hereto appended, to-wit:        *        *        *        *        *
*        *        *        The southwest quarter of Sec. No. twentty-five (25), township No. fifty-five (55), range No. thirty-one, (31).

Then follows a certificate of the Commissioner that the lands in the foregoing list had been selected on behalf of the State of Missouri, in pursuance of the provisions of said act of Congress of June 10th, 1852, in lieu of such even numbered sections and parts of sections, within six sections in width on each side of said railroad, as had been sold by the United States, or to which the right of pre-emption had attached, in accordance with the act of Congress aforesaid, and a recommendation that the selection and appropriation of said lands to the State of Missouri be approved, subject to any valid interfering rights.    Subjoined is the following :

DEPARTMENT OF THE INTERIOR, }
WASHINGTON, February 9, 1854.    }

Approved, subject to any valid interfering rights.

R. MCCLELLAND, Secretary.

Appended to the foregoing is a certificate from the

Commissioner of the General Land Office, dated in May, 1856, recapitulating the said caption, certificate and approval, and concluding with the statement that the said lists are now again certified in conformity with the provisions of the act entitled "An act to vest in the several States and Territories the title in fee of the lands which have been or may be certified to them," approved 3rd of August, 1854. It appeared in evidence that the Hannibal & St. Joseph Railroad was completed the latter part of February, 1859, and that it was completed to within twenty miles of Clinton county the first of January, 1859.

Testimony was admitted, against the objections of the plaintiff, showing that the land in controversy was high, dry, rolling prairie; that no part of it was swamp land, or subject to overflow, and that all of it was fit for cultivation without artificial drainage or embankment, and that such had been its character ever since the witnesses first knew it, in 1837. It was admitted that the defendant was in possession of the land sued for, under a valid deed from the Hannibal & St. Joseph Railroad Company. This was all the evidence offered. The cause was tried by the court, without the aid of a jury.

The plaintiff asked the following declarations of law: "That the land in controversy having been selected by John T. Johnson, agent of Clinton county, as swamp or overflowed land, and he having reported the same to the Surveyor-General, who, under instructions from the Commissioner of the General Land Office, certified the same to said Commissioner of the General Land Office, on the 23d day of May, 1854, as swamp or overflowed land, and said lands having been certified to the Register of Lands for the State of Missouri, and said lands having been donated to the county of Clinton, and by the county court thereof, through its officer, the sheriff of said county, sold to the plaintiff, the court therefore declares the law to be for the plaintiff, and finds that he is entitled to the possession thereof for the following reasons: *First.* Because the de-

fendant failed to show, to the satisfaction of the court, that the Hannibal & St. Joseph Railroad Company, under whom defendant claims, had, prior to the 3d day of March, 1857, commenced the construction of its railroad, or that it had completed any part thereof in Clinton county, or within twenty miles thereof. *Second.* Because defendant failed to show that said company had, prior to said date, filed a list of its lands in the office of the recorder of deeds of said county. *Third.* Because it is not shown in evidence that said company has ever filed or had recorded, in the office for recording deeds in said county, any map of its lands, nor map or profile of the part of its road, located in said county." The foregoing declarations were refused by the court.

At the instance of the defendant, the court declared the law to be that "plaintiff must recover in this case, if at all, upon the strength of his own title, and not upon the weakness of defendant's, and before plaintiff can recover, he must show an absolute legal title to the land in suit."

The court then made the following finding of facts and declaration of law: *First.* That the Hannibal & St. Joseph Railroad was definitely located on the 10th day of June, 1853. *Second.* That a copy of such location was forwarded to the local land office and to the general land office at Washington, and recorded in said general land office, on the 10th day of June, 1853. *Third.* That lists and plats, including the land in controversy, were issued and delivered to the Hannibal & St. Joseph Railroad Company by the Commissioner of the General Land Office, approved by the Secretary of the Interior, on the 9th day of February, 1854. *Fourth.* That the Hannibal & St. Joseph Railroad was fully completed on the 24th day of February, 1859. *Fifth.* That the land in controversy is within fifteen miles of the Hannibal & St. Joseph Railroad, and that the same was not swamp or overflowed on the 28th day of September, 1850. *Sixth.* That the defendant is in possession of the land in controversy, under a valid deed

from the Hannibal & St. Joseph Railroad Company. And the court declares the law to be, that such facts vest the title to the land in controversy in the grantee of the Hannibal & St. Joseph Railroad Company; that the plaintiff has no title to said land, and that the verdict and judgment of the court must be for the defendant. Judgment was rendered accordingly, and the plaintiff has appealed to this court.

The first error assigned, requiring notice, is the admission of the parol evidence offered by the defendant, showing that the land in controversy was not swamp land within the meaning of the act of Congress of 28th of September, 1850. This testimony is now objected to on the ground that the officer of the United States whose duty it was to act in the premises, had certified said land to the State in pursuance of the act of Congress of September 28th, 1850, and his decision was conclusive; and because the title to said land was confirmed to the State under the act of Congress of March 3d, 1857. As the only objection to the admission of this testimony made by the plaintiff in the trial court, was, that the title had vested in the county of Clinton prior to any claim of the defendant to said land, and as this general objection does not, in our opinion, necessarily include the specific objection now made, we might very properly decline, under previous adjudications, to entertain an objection to testimony made for the first time in this court; but, as the admissibility of this testimony depends upon facts which have an important bearing upon the merits of the controversy, it will be as convenient to consider those facts now, as at any other stage of our inquiry.

Is it true that the officer whose duty it was to act in the premises, ever certified to this State the land in controversy, as swamp land? It is claimed that the Commissioner of the General Land Office made such certificate to the Register of Lands of Missouri. We do not conceive

that the duties imposed upon the Secretary of the Interior by the swamp land act of 1850, could be performed by the Commissioner of the General Land Office, without some lawful, special delegation of authority; and no such authority appears in the record. Conceding, however, that the rule announced in *Wilcox v. Jackson* 13 Peters, 513, that "the president speaks and acts through the heads of the several departments, in relation to subjects which appertain to their respective duties," is also applicable to the heads of departments themselves, and that they likewise speak and act through the chiefs of the various departmental subdivisions under their supervision and control, and that the duties imposed by the swamp land act upon the Secretary of the Interior could be performed by the Commissioner of the General Land Office, as contended by the plaintiff, and it will avail him nothing. The land in controversy was never certified by the Commissioner of the General Land Office to the Register of Lands, in pursuance of the swamp land act of 1850.

On the 30th day of December, 1873, nearly two months after the institution of the present suit, the Commissioner of the General Land Office granted a certificate that certain lists of swamp lands, which included the land in controversy, were true and literal copies of the original swamp land selections on file in his office. But there is nothing accompanying this certificate, nor on the face of it, conducing to show, even in the faintest degree, that the Commissioner of the General Land Office had approved, or intended to approve, the selections contained in said list. Before this list ever reached the commissioner's office, the land now in controversy had been certified by him to the State under the act of 1852. Indeed, there is nothing to show that the list and certificate were ever intended for the Register of Lands of Missouri, or that they were ever designed to constitute anything more than an ordinary exemplification of the records on file in the commissioner's office. How they reached the register's office does not ap-

pear, but it is plain, from the face of the papers, that their presence there confers no rights upon the State of Missouri, and none, therefore, upon the county of Clinton. It is quite evident, from the certificate of the register himself, that he did not regard the list as a part of the records of his office, for the list is certified by him to be a copy of a certified copy made December 30th, 1873, at the General Land Office. Nor can the effect which we have given to the certificate of the Commissioner of the General Land Office be enlarged by reason of anything said by this court in the case of *Clarkson v. Buchanan*, 53 Mo. 571, cited by appellant's counsel. It was said in that case: " The plaintiff produced in evidence a list of the swamp lands in Macon county, certified from the office of the Register of Lands, embracing this tract, and that was *prima facie* evidence. The presumption is that the list was legally and correctly there." But the list certified by the Register of Lands in that case, as shown by the record, was a "list of swamp lands in Macon county, *selected*, *approved* and *patented*," copied from the records and documents on file in his office, and not a mere copy of an exemplification of the files of the general land office, on which no action had ever been taken by the Secretary of the Interior or the Commissioner.

If the lands in question were not, in fact, swamp lands, and the Secretary of the Interior had not included them in any lists and plats of swamp lands certified by him to the State, then, notwithstanding they were selected and reported to the Register of Lands by the county commissioner, and to the Commissioner of the General Land Office by the Surveyor-General, the title to them could not vest in the State as a part of the grant made by the act of 1850, prior to the confirmatory act of March 3d, 1857, the effect of which act was to vest in the State the title to all lands which had at that date been selected and reported to the Commissioner of the General Land Office as swamp and overflowed lands, whether they were in fact swamp

Funkhouser v. Peck.

lands or not, provided the same were then vacant and un-appropriated. Whether the lands in question, therefore, were in fact swamp lands, was a pertinent and important inquiry, and the testimony was properly admitted.

Regarding the finding of the court, that the lands in controversy were not swamp lands, as conclusive of that

2. ———: acts of congress of June 10th, 1852, and of Aug. 3d, 1854, in aid of the con-struction of rail-roads in this state, what confers title under: act of March 3d, 1857, what not vacant and unappropria-ted land within its meaning.

question in this proceeding, we proceed to inquire whether said lands were vacant and unappropriated at the passage of the act of March 3d, 1857. By reference to the state-ment we have made, it will be seen that a descriptive list of lands accruing to the State under the act of June 10th, 1852, containing the land in controversy, was made out and certified on the 9th of February, 1854, by the Commissioner of the Gen-eral Land Office and approved by the Secretary of the In-terior; and afterwards, in May, 1856, said list was again certified by the Commissioner of the General Land Office, in conformity with the provisions of the act of Congress of the 3d of August, 1854. That act is as follows: "That in all cases where lands have been, or shall hereafter be, granted by any law of Congress to any one of the several States and Territories; and where said law does not con-vey the fee simple title of such lands, or require patents to be issued therefor, the lists of such lands, which have been or may hereafter be certified by the Commissioner of the General Land Office, under the seal of said office, either as originals, or copies of the originals or records, shall be regarded as conveying the fee-simple of all the lands embraced in such lists that are of the character con-templated by such act of Congress, and intended to be granted thereby; but where lands embraced in such lists are not of the character embraced by such acts of Con-gress, and are not intended to be granted thereby, said lists, so far as these lands are concerned, shall be perfectly null and void, and no right, title, claim or interest shall be conveyed thereby."

This court, in commenting upon the foregoing act, in the *Han. & St. Jo. R. R. Co. v. Smith*, 41 Mo. 310, 329, said: "That the act of Congress of 1852 was one of the acts here referred to, there is little room for doubt. It·did not directly convey the fee-simple to any specific and certain tracts of land, nor did it require patents to be issued. The particular sections, or parts of sections, which were to be the subject of the grant, remained to be ascertained in future. * * * * We suppose the proper effect of this provision of the act of 1854 to be, that such lists shall be regarded as evidence of this (the) location and identity (of the lands granted) sufficient to bring the tract of land therein contained and described, within the granting words of the act of 1852, and so to convey the title in fee-simple; but if the lands embraced in such lists are not of the character contemplated by the act·of Congress, and are not such as were intended to be ·granted thereby, then the lists are to have no effect as evidence." In another connection, speaking of the ·act of 1852, (p. 335), the court said: "No means of proving a title to the specific lands granted was provided by the act itself. The act of 1854 seems to have been intended to supply ·this defect. In *Baker v. G'ee*, 1 Wall. 333, these descriptive lists were recognized as being the proper evidence to show the lands to which the road was entitled." In the foregoing case of *Han. & St. Jo. R. R. v. Smith*, parol testimony was admitted to show that the lands were swamp land, and therefore not of the character contemplated by the act of 1852; and the railroad company, which claimed title, under a certified list made by the Commissioner of ·the General Land Office, in pursuance of the act of 1854, was defeated on that ground alone.

The lists offered in evidence by the defendant in this case, undoubtedly conferred upon the State the title·to all

3. EJECTMENT: swamp lands: railroad lands. the lands therein described, which were not swamp lands, and not embraced in some other grant. And, it is immaterial, so far as the State's title is

concerned, whether or not the road was completed to or through Clinton county, at the time the selections were made. Counsel for plaintiff is in error when he states that "the act of June 10th, 1852, authorized the Secretary of the Interior to select the land to which the road was etitled, *only as each twenty miles of said road was built.*" That act simply restricted the right of the State to sell the land thereby granted, by providing "that a quantity of land not exceeding one hundred and twenty sections on each road, and included within a continuous length of twenty miles of said road, may be sold; and when the Governor of said State shall certify to the Secretary of the Interior that said twenty miles of said road is completed, then another like quantity of land hereby granted may be sold;" and it was further provided that if the road was not completed within ten years, no further sales should be made, and the land unsold should revert to the United States. The road, as we have seen, was completed in 1859, about seven years after the passage of the act.

A portion of these lands were granted by the State to the Hannibal & St. Joseph Railroad Company, by the act of September 20th, 1852, subject to the conditions, reversion, and provisions contained in the act of Congress; and by said act of the General Assembly the company was further required to place upon record in the several counties through which said road was located, and within one year after its location, maps of the lands lying in said several counties, taken and obtained for the use of the road. By the 5th section of that act, the privilege of pre-empting said land was conferred upon certain settlers; and in the case of *Baker v. Gee,* 1 Wall. 335, the validity of the State statutes, imposing burdens and conferring privileges upon the grantees of the State was admitted, and it was held that a grantee of the railroad company could not recover against a defendant claiming by pre-emption under the State, without showing that a map of the lands selected

and located for the railroad had been duly recorded, as required by statute.

On the authority of this case, and that of *Pacific Railroad v. Lindell's Heirs*, 39 Mo. 329, it is contended by the plaintiff that as the defendant failed to show that the railroad had complied with the statute requiring maps of its lands to be recorded, the title never vested in the company, and the plaintiff is entitled to recover. In the first case, both parties claimed under the act of September 20th, 1852, and the only question was which had acquired the better right under that act. It was conceded that the title was in the State by virtue of the railroad grant of June 10th, 1852, and the contest was as to whether the plaintiff or defendant had acquired that title. The case of *Pacific Railroad v. Lindell's Heirs*, 39 Mo. 329, is totally unlike the case at bar, and is no authority for the position assumed by the plaintiff. There, the railroad company was plaintiff, and was bound to show title in itself—and it was not only held that no title had vested in the railroad, by reason of its failure to record maps of its lands, but it was also held that no title ever vested in the State. The lands in controversy in that case had not been certified to the State, under the act of 1854; besides, they were reserved from the grant of the 10th of June, 1852, as they were covered by a valid location made in 1833, under the act of Congress of February 17th, 1815, for the relief of the sufferers by earthquake in New Madrid.

So far as the plaintiff's right to recover in the present action is concerned, it is wholly immaterial whether the railroad company has or has not complied with the requirement of the statute in relation to recording maps of its lands. It is quite clear that if the legal title has never vested in the railroad company in consequence of its noncompliance with the statute, the title is in the State, by virtue of the grant of 1852, and the action of the Commissioner of the General Land Office, under the act of 1854. The completion of the road in 1859 prevented a reversion

to the United States, and the title is either in the defend-ant or in the State. Whether it is in the one or the other, need not now be determined. If the title is not in the plaintiff, that disposes of the present controversy.

Our opinion is, that at the passage of the act of March 3d, 1857, the land in question had been legally appropriated to aid in the construction of railroads in this State, and did not pass to the State as a part of the swamp land grant. The confirmation of 1857 could not take effect by relation, so as to extinguish a valid right acquired before the passage of the confirmatory act. The judgment of the circuit court will be affirmed. The other judges concur.

AFFIRMED