PRIOR, *Appellant*, v. LAMBETH.

1. **Swamp Lands:** PUBLIC LANDS: PRIORITY OF PATENTS. A patent from the United States to the State of Missouri under the act of congress of September 28th, 1850, does not relate back to and become operative from the date of said act, so as to annul the title of a purchaser under an entry and patent subsequent to said act, but prior to any selection or designation of such land as swamp land by the Secretary of the Interior.

2 **Judgment in Ejectment:** ESTOPPEL. Upon a recovery by plaintiff in ejectment, defendant in pursuance of an agreement with the plaintiff turned over to the plaintiff his claims for rent against the tenants in satisfaction of the money portion of the judgment; *Held*, that the judgment and agreement did not estop defendant from maintaining ejectment against plaintiff for the same land.

*Appeal from Osage Circuit Court.*—HON. A. J. SEAY, Judge.

AFFIRMED.

*Edwin Silver* for appellant.

*L. C. Krauthoff* for respondent.

PHILIPS, C.—Action in ejectment to recover " the south fractional half of southeast fractional quarter (west of the Gasconade river) of section 3, township 43, north of range 7 west." The answer tendered the general issue, and pleaded specially a former recovery by defendants in an action of ejectment against plaintiff, and that it was afterward agreed between them that if defendant here would not enforce the collection of plaintiff of the rental part of said judgment, the plaintiff, Lambeth, would surrender to Prior possession of said land, and that this proposal was accepted and acted on as a full settlement of this whole controversy, which settlement defendant pleads in estoppel. A jury being waived, the cause was tried by the court.

Plaintiff's title consisted of a certificate of entry for the land from the proper United States land office, of date March 13th, 1855, issued to one Christopher Hamilton; patent thereon to said Hamilton dated January 1st, 1862, and deed from Hamilton to plaintiff. Defendant claims that the land is what is commonly known as swamp or overflowed land, coming to the State of Missouri by virtue of the act of congress of date September 28th, 1850. It was patented to the State in January, 1863, and by the Governor of the State to Osage county in 1869, and by the county it was conveyed to the defendant in 1875.

The evidence touching its swampy character, and the steps taken by the authorities to determine its status, are briefly as follows: In 1851 the surveyor of Osage county filed in the office of the Secretary of State an affidavit stating that he had examined the southeast fractional quarter

of said section, and found the same to be swamp land; in 1853 the Surveyor General for Illinois and Missouri filed in the office of the Register of Lands of Missouri a list of swamp lands, including the southeast fractional quarter of said section west of the river Gasconade; in 1867 the Register of Lands for the State made out a certificate, which was filed in the office of the county clerk of Osage county, stating that said lands with others had been patented to the State.

The records in the land office at Washington City showed in substance, the following facts:    In 1858 the Commissioner of the General Land Office certified to the Secretary of the Interior for his approval, under the Swamp Land Act, the following lands in said section: "Northwest quarter of northeast quarter, south fractional half of northeast quarter, north of the Gasconade river, and the northeast quarter of southeast quarter." This list was approved by the secretary in 1859.   In 1866 a similar list was certified and approved embracing the northwest quarter of southeast quarter.   The patent above referred to, from the United States to State of Missouri, described the lands as follows : "The northwest quarter of northeast quarter, the south fractional half, north of the river, and the northeast quarter of the southeast quarter of section 3, township 43, range 7." Defendant introduced a witness who testified that the land was swampy.

The only evidence relative to the estoppel set up in the answer, is the testimony of the plaintiff, who was introduced as a witness by defendant.   It is as follows: "I asked Prior to let me off with the rents and profits in the other suit for this land, and he would not do it; Prior had a writ of possession and had rented the land to other parties; Prior and I then agreed that I should give Prior the rent due me, and he would let me off as to the judgment for rents and profits; I gave him my rent—one-third of the crops—and he released me from the money judgment; writ of possession was not then served on me; I gave Prior

possession because of the writ; I had to get out; he took my rent which was due me from the tenants to whom I had rented, and released the judgment for money; the sheriff had told me he had the writ." On cross-examination: "Mc-Clemens, who was my attorney, told Prior that he had no doubt of my title and could sue him at the next term of the court."

A number of instructions were requested and given and some refused. But as the trial was had before the court, and the conclusion reached by the court being, in our opinion, correct, it is unnecessary to review the instructions. The court found the issues for the plaintiff, and the defendant brings the case here on appeal.

I. The contention of appellant, defendant below, is that the land in controversy is swamp land, donated to the State by the well known act of congress of September 28th, 1850, providing for the reclamation of swamp and over-flowed lands. 9 U. S. St. at Large, p. 519. He asserts that the act of congress operated as a grant *in praesenti* by which the title to such land passed *eo instanti*, to the State. Therefore, he contends that notwithstanding between the date of the act of congress and the subsequent segregation of the lands as swamp lands by the Secretary of the Interior, and the issue of the patent, the United States may have sold and patented the land as of the public domain to an individual, yet when the patent for the land in question issued to the State it had relation back to and became operative from the date of the act of 1850, so as to effectually cut out such intervening purchaser.

*French v. Fyan*, 93 U. S. 169, is cited in support of this proposition. It is worthy of observation that there it was a controversy between a claimant under the Swamp Land Act on the one side, and under the Pacific Railroad grant on the other. While the land was certified to the railroad company by the Secretary of the Interior in 1854, it was patented to the state as swamp land in 1857, five years before the purchaser under the railroad contracted

for it. So that the case was to be determined really on the right and claim of the state and the railroad as they stood in 1857, when the government patented the land to the state. Both of the claimants were donees—beneficiaries of the bounty of the government. And as no question of the rights of an intervening purchaser were involved, and as neither the acts of 1855 nor 1857, hereinafter referred to, applied, the court might well have held that the doctrine of relation obtained so that the patent to the state in 1857 took effect as of 1850.

But a more satisfactory answer, perhaps, may rest on the fact that the grant to the railroad was not, in the nature of the case, one *in praesenti*. It was necessarily made to depend upon the future location of the road. Until the location was definitely fixed it was impossible to know what sections of land would be touched, on which the designation of the alternate sections would depend. Coupled too with the railroad grant was a proviso excepting from its operations "all lands heretofore reserved by any act of congress, or in any manner by competent authority, for the purpose of aiding in any object of internal improvement, or for any other purpose whatever." This excluded from the railroad grant, the lands covered by the acts of 1850. *Railroad Co. v. Smith*, 9 Wall. 95, 97, 98.

In construing the act of 1850 the whole act must be considered together. The first section standing alone would seem, *ipso facto*, to vest the lands in the state without more. But the second section makes it the duty of the Secretary of the Interior, on evidence manifestly to be obtained by him through surveys and other reliable sources, to make out accurate lists and plats of the lands, designating them as swamp and overflowed. The third section provides that in making said lists, where the greater part of a subdivision is wet and unsuited for cultivation, the whole of it shall be included in such lists and plats. Manifestly there are prescribed in the act things to be done by the head of the interior department, and by him alone, before the grant is

ascertained and defined. This, therefore, in the very logic of the case, is a precedent act.

So Justice Miller, (who wrote the opinion in *French v. Fyan, supra,*) in the latter case of *Martin v. Marks*, 97 U. S. 347, 348, says: "These selections, though approved by the Surveyor General, who was merely a local officer, still lacked the authentication of the Secretary of the Interior, to whom alone congress has confided the duty of confirming them, or making them for himself." "The act of 1850 was a present grant subject to identification of the specific parcels coming within the description."

This also is the construction placed on this act by the courts of the states concerned in the swamp land grant, which certainly could have no interest to hinder the operation thereof by making it dependent on the action of a government officer beyond their jurisdiction. *Morgan v. R. R. Co.*, 63 Mo. 129; *Funkhouser v. Peck*, 67 Mo. 19; *Stephenson v. Stephenson*, 71 Mo. 127; *Funston v. Metcalf*, 40 Miss. 504; *Thompson v. Prince*, 67 Ill. 281. These cases hold in effect that the selection or designation to be made by the Secretary of the Interior was the act of segregation essential to the consummation of the grant. We would not be understood as holding that it is in the power of this departmental officer to deny to the state the benefit of the government's bounty by wantonly or arbitrarily withholding his approval. Like any other officer upon whom a public duty is imposed by law, he is amenable to the law and subject to the jurisdiction of the proper courts.

It is manifest from the record proofs in this case that the Secretary of the Interior never did list and plat or approve the land in controversy as swamp land. He recognized and listed the balance of this section as swamp land, but from some cause omitted the land in suit. Neither is there any evidence that it was ever called to his attention, by evidence or report, as being swampy or overflowed, prior to Hamilton's entry in 1855. Whether the knowledge conveyed to him by the records in his department, of

the fact of Hamilton's purchase induced the withholding of the secretary's approval, is conjectural, but is not improbable. It is quite clear from the letter of the Commissioner of the General Land Office read in evidence that the land listed, platted and approved as swamp land by the Secretary of the Interior did not embrace the south fractional half of southeast fractional quarter of said section; but it in fact was the south fractional half of northeast quarter.

In the patent to the State, subsequent to Hamilton's entry and patent, it is described as the south fractional half north of the river, whereas the land is west of the river. Waiving any discussion of the sufficiency of this description to convey the land in suit, the evidence proves conclusively that Hamilton entered the land on the 13th day of March, 1855, and received a patent therefor on the 1st day of January, 1862, prior to the issue of the patent to the State, which is the only evidence defendant can assert of any designation by the Secretary of the Interior of the land as swamp land.

Now, it is a matter of public history, recognized in departmental, legislative and judicial records and proceedings, that between the time of the passage of the Swamp Land Act and the selection and approval by the Secretary of the Interior, the purchase of such lands by private citizens, both from the State and the United States, became frequent, and led to so much uncertainty, conflict and anxiety about the titles, that on the 2nd day of March, 1855, the congress of the United States, out of a proper regard to the equities involved, and as a means of adjustment, passed the act "for the relief of purchasers and locators of swamp and overflowed lands." This act contained but two sections. The first directed as soon as practicable the President should have patents issued to the purchasers and. locators of lands claimed as swamp lands, prior to the issue of patents to the states, with the exception that where the states had made sales before entry under the laws of the

United States, no patent should be issued until the state released; but if the states omitted for ninety days to forward lists of the lands so sold, then patents should issue without delay. The 2nd section made provision for indemnity to the states by directing that the purchase money in cash sales, by the United States, should be paid over to the states, and in case of locations by warrants the states should have in lieu thereof other lands, subject to entry, to be selected by the state.

As Hamilton did not make his entry until eleven days after the passage of this act, its provisions, which were retroactive, did not apply to his case. But on the 3rd day of March, 1857, congress passed an additional act to confirm to the states the swamp lands " selected under the act of 1850." It declared that the selection of swamp lands theretofore made and reported to the General Land Office, and remaining vacant and unappropriated, and not interfered with by actual settlement under any existing law of the United States, was thereby confirmed, etc. But it was expressly declared and reserved that the provisions of the act of 1855 should continue in force and apply to all entries of lands claimed as swamp lands, made since its passage. Hamilton's entry was thus preserved and protected by the act of 1857. *Funkhouser v. Peck*, 67 Mo. 19 to 36; *Funston v. Metcalf*, 40 Miss. 504; *Dale v. Turner*, 34 Mich. 405, 415. This Michigan case is a clear and able review of this question and fully sustains this opinion.

The legislature of Missouri, by repeated enactments, has indicated to the government of the United States its acceptance of the provisions of the acts of Congress in question. Act of December 13th, 1855, Local Laws 1855, p. 361; Acts of 1865, pp. 130, 131; Acts of 1867, p. 122. It was perfectly competent for the federal and state governments, the parties to the grant, where it did not, as in the case at bar, conflict with any intervening right, to make the agreement contained in the provision of the acts of 1855 and 1857. *Dale v. Turner, supra*, 416. It may be as

well to observe that these confirmatory acts are in perfect accord with the doctrine that the act of 1850 was a grant *in praesenti*, becoming operative therefrom, by relation, after the lands have been designated and approved by the secretary. Acts of confirmation are favored by the judicial department of government, as the rights of *bona fide* purchasers and settlers on public lands are deserving objects of legislative and judicial protection. It follows that as there had been no selection of this land, as swamp land, prior to Hamilton's entry, nor indeed prior to the issue of his patent, the plaintiff's title is fully protected by the acts of 1855 and 1857, and the judgment below was for the right party on this issue.

II. As to the matter of estoppel, so called, pleaded by the defendant, it is sufficient to say it is not sustained by the proof. There was no surrender of the possession of the land in consideration of forbearing to enforce the payment of accrued rents. The evidence shows only that this part of the judgment was set off, by agreement, by the defendant in that action turning over to the plaintiff there —defendant here—the claim he had against the tenant of the land for rent money. The explicit statement of the plaintiff touching this matter was: "I gave Prior possession because of the writ," which the sheriff then had. The defendant having seen fit to introduce the plaintiff as his sole witness on this point, ought not to complain if his statement was fatal to his claim.

The judgment of the circuit court is affirmed. All concur.