SUPREME LODGE KNIGHTS AND LADIES OF HONOR v. JOHNSON.

Opinion delivered February 4, 1907.

1. INSURANCE—LIABILITY OF FRATERNAL ASSOCIATION.—The constitution and by-laws of a fraternal insurance association form a part of the contract, and must be complied with before the association becomes liable for a death loss. (Page 514.)

2. SAME—WAIVER OF REQUIREMENT OF MEMBER.—If a requirement in the by-laws of a fraternal insurance company that an applicant for membership shall be initiated before any liability for his death accrues may be waived by the action of a subordinate lodge, the mere election to office in such lodge of an applicant for membership will not operate as a waiver of such requirement if the applicant was never installed and never attended any meeting of the lodge. (Page 514.)

Appeal from Sebastian Circuit Court; *Styles T. Rowe*, Judge; reversed.

*F. A. Youmans* and *W. H. Dunblazier*, for appellant.

*Sam R. Chew*, for appellee.

McCULLOCH, J.   The plaintiff, Nannie E. Johnson, instituted this action against the Supreme Lodge Knights and Ladies of Honor, a fraternal society organized as a corporation under the laws of the States of Kentucky, Missouri and Indiana, to recover the amount of a relief fund certificate or policy therein on the life of her son, Charles Johnson, who is alleged to have been a member of said society at the time of his death.   The defendant denied that said Charles Johnson was a member of said order, and upon this issue the jury returned a verdict in favor of the plaintiff.   It appears from the evidence that in the month of January, 1904, E. R. Settle, deputy grand protector of this order, solicited and procured applications from various persons at Fort Smith, Arkansas, for membership, preparatory to the organization of a subordinate lodge at that place.   He secured the application, dated January 15, 1904, of Charles Johnson, and the medical examination of said applicant was approved on January 23, 1904, by the supreme medical examiner.

The provision of the constitution and laws of the society, with reference to the institution of subordinate lodges is as follows:

"New lodges, consisting of not less than twenty applicants for relief fund membership, may be instituted and the degree conferred after the examination of the applicants by the subordinate medical examiner, and his recommendation to the supreme medical examiner for his approval of the same; but no relief fund certificate shall be issued, nor shall any liability be incurred by the supreme lodge, nor shall the membership be complete, until the medical examinations of at least twenty of the said applicants shall have been submitted to and approved by the supreme medical examiner and said applicants shall have been duly obligated in lodge session.

"The initial assessment required by relief fund law 1 to be paid by charter members of lodges instituted on or after the 22nd day of a month shall be accounted for and forwarded as the assessment for the month next following."

On February 5, the first meeting was held for the purpose of instituting the lodge, and at this meeting, as shown by the minutes, the deputy grand protector presided and a representative of the supreme lodge was present and assisted in the organization. At this meeting the applications of 49 (including Charles Johnson) were read, and they were all balloted upon and elected to membership; and nineteen of them were obligated according to the laws of the order. Johnson was not of the number, and was not present at the meeting. Several other persons were elected to membership on cards from other lodges. The election of officers was postponed until a subsequent meeting to be held on February 10; and on that date another meeting was held at which the officers of the lodge were elected and installed, and other business was transacted, including the reception of other applications and election of the applicants to membership. Another meeting was held on February 20, at which business was transacted, including initiation of applicants.

The charter of the lodge was issued dated March 5, 1904, and recited that the lodge had been instituted on February 15, 1904, the law concerning issuance of charters being as follows:

"Charters shall be issued to grand lodges and subordinate lodges by the supreme secretary within sixty days after satisfactory evidence of their organization has been furnished."

Charles Johnson died April 24, 1904. He never attended

any meeting of the lodge, nor was he ever obligated or initiated. On February 23, he paid the amount of one assessment in the relief fund to Settle, the deputy grand protector, but made no other payment, and was reported to the supreme lodge as suspended for non-payment of assessment, and for failure to take the obligation.

The supreme secretary issued a relief fund certificate for him dated February 15, 1904, and same was forwarded to the secretary of the subordinate lodge, but was never delivered to him.

It is conclusively shown that, for at least two reasons, Charles Johnson was not a member of the order, and that the plaintiff can not recover.

In the first place, he was never obligated or initiated as a member of the order. The law of the order hereinbefore quoted, as well as other sections of the constitution and laws, provide that the membership shall not be complete until the applicant shall have been obligated or initiated. The constitution and laws of the society formed a part of the contract, and must have been complied with before there could be any liability. I Bacon on Benefit Societies, § 81; *Woodmen of the World* v. *Jackson,* 80 Ark. 419.

It is contended on behalf of appellee that the failure of the applicant to be obligated or initiated was waived by the action of the subordinate lodge in electing him to an office in the lodge. The minutes of the meeting held on February 10, 1904, show that Johnson was elected to the office of sentinel, but he was never installed and never attended a meeting. If it be conceded that the subordinate lodge had the power, by any action of that body, to waive this positive requirement of the constitution and laws of the supreme lodge, the mere election to office in the lodge of an applicant for membership, where he was never admitted and never attended meetings or performed any of the duties of the office, could not operate as a waiver of any prerequisites to completed membership in the order. Certainly, it could not be considered a waiver until there was an acceptance of the office and an installation therein.

The laws of the order provide that "in all acts performed in complying with the relief fund laws of the order the subordinate lodge and its officers are the agents of the members, and

not the agents of the supreme lodge." It may well be doubted whether the subordinate lodge could waive the provision with reference to obligation or initiation at all, but this we deem it unnecessary to decide now. We do hold, however, that it was not waived in this instance.

In the next place, if Johnson ever became a member, he was suspended from membership on account of his failure to pay the assessment for the month of March. The lodge was instituted prior to February 22, and the assessment paid on February 23 must have been applied on the February assessment. It is not contended that he ever paid another assessment, and, under the law, he stood suspended at the end of the month of March for the non-payment of the assessment due for that month. It is argued that, because the money of some of the members paid at or about the same time was applied on the March assessment, the payment made by Johnson should have been so applied; but it is shown that the examinations of those persons were not approved by the supreme medical examiner until March 10, 1904, and that, for this reason, their initial assessments were not due until March. Johnson's examination was approved in January, and his assessment was due within thirty days from the date of such approval.

The instructions of the court were in conflict with the law as herein announced, and were therefore erroneous; and the evidence was not sufficient to sustain a verdict in favor of the plaintiff.

Inasmuch as the case has been fully developed, and it is obvious that the plaintiff cannot recover, it is useless to remand the case for a new trial.

Reversed and dismissed.