## WOODMEN OF THE WORLD *v.* HALL.

### Opinion delivered May 27, 1912.

1. INSURANCE—MUTUAL BENEFIT SOCIETY—POWERS OF OFFICERS.—A person wishing to become a member of a mutual benefit society is supposed to have made himself acquainted with the constitution and bylaws of the order and to kncw the limitations on the powers of its lodge officers and subordinate bodies which are contained in such constitution and bylaws. (Page 544.)

2. SAME—MUTUAL BENEFIT SOCIETY—WAIVER OF BYLAWS.—The officers and subordinate lodges of a mutual benefit society have no authority to waive the provisions of its bylaws and constitution which relate to the substance of the contract between the applicant and the association. (Page 544.)

3. SAME—MUTUAL BENEFIT SOCIETY—WHEN CONTRACT BINDING.—Compliance with the essential terms of the constitution and bylaws of a fraternal association is a necessary prerequisite to a valid contract of insurance, (Page 545.)

4. SAME—MUTUAL BENEFIT SOCIETY—PAYMENT OF ASSESSMENTS.—Where a bylaw of a mutual benefit society provided that the liability of the society should not begin until one or more advance monthly payments of assessments had been made by the applicant, a payment made after his death could not make the contract binding. (Page 545.)

5. SAME—MUTUAL BENEFIT SOCIETY—WHEN CONTRACT BINDING.—The requirement of a bylaw of a benefit society that an applicant shall be initiated before liability for his death shall accrue was essential to make the contract binding. (Page 546.)

6. SAME—NOTICE TO MEDICAL EXAMINER.—Notice to the medical examiner of anything not called for by his certificate, but which is a part of the application filed by the applicant for insurance, is not notice to the company. (Page 547.)

7. SAME—WHEN INSURER NOT ESTOPPED TO DENY LIABILITY.—While a denial of liability by an insurance company upon one ground may, under certain circumstances, operate as a waiver of some other defenses which it might have interposed, this rule can not be invoked unless the conduct of the insurer has been such as to induce action or inaction in reliance thereon, and would operate to mislead the other party to his injury. (Page 549.)

8. SAME—MUTUAL BENEFIT SOCIETY—ELIGIBILITY.—Where the bylaws of a mutual benefit society provided that no saloonkeeper should be admitted into the society, one who was engaged in that occupation was ineligible. (Page 550.)

Appeal from Poinsett Circuit Court; *W. J. Driver*, Judge; reversed.

*Bradshaw, Rhoton & Helm,* for appellant, *Arthur H. Burnett,* general attorney.

1. The peremptory instruction should have been given, as there was no evidence to support a verdict. Where the verdict is grossly contrary to law, though in accordance with the instructions of the court, and was totally unsupported by any legal evidence, the judgment will be reversed. 28 Ark. 550; 34 *Id.* 632; 5 *Id.* 640; 7 *Id.* 462; 25 *Id.* 49.

2. Delivery of a contract is absolutely necessary to its validity. A delivery was necessary by the terms of the certificate, constitution and bylaws while in good health. 106 Tenn. 695; 52 L. R. A. 444. A policy holder must acquaint himself with the constitution and bylaws of a mutual association, and is presumed to know them. 43 L. R. A. 395.

3. Where the laws of a fraternal society provide that no liability for benefits upon death shall attach until initiation, such initiation is essential to recovery, notwithstanding the applicant may have died after the delivery of the certificate and after the payment of the first payment before initiation. 122 S. W. 1139; 82 Tex. 301; 77 Neb. 282; 107 Minn. 12.

Where a benefit certificate embodies the conditions of the constitution and bylaws of a benefit society, or makes them a part thereof, such certificate does not become operative until all such conditions are complied with. 76 Mo. App. 573; 28 Fed. 705; 30 Fed. 545; 49 So. 883; 52 Ark. 202; 53 Ark. 255; 80 Ark. 419; 81 Ark. 512; 94 Ark. 499; 96 Ark. 154; 66 Ark. 612.

Where it is stipulated that a certificate is not binding until delivered, and the manner of delivery is stipulated in the contract, the policy is not operative until all the requirements with reference to delivery have been complied with. 35 Ind. App. 89; 106 Pac. 328; 74 S. W. (Ky.) 853; 73 N. E. (Ind.) 1041; 82 S. W. (Mo.) 966; 51 Fed, 689; 59 S. E. (Ga.) 283; 6 Bush 450; 90 S. W. (Ky.) 544; 93 S. W. (Ky.) 659; 18 Minn. 448; 33 S. E. 536.

4. An untrue statement or a false warranty in an application which becomes a part of and the basis of the contract, renders the certificate void. 54 N. J. L. 490; 25 Atl. 367; 30 N. Y. Supp. 205; 130 S. W. 858; 113 Mo. App. 473;

152 Ill. App. 92; *Id.* 242; *Id.* 155; 7 S. D. 214; 110 N. W. 452; 20 Atl. 873; 89 Pac. 929; 58 Ark. 528; 96 Ark. 499; 72 Ark. 620.

5. Under the terms of the contract, no one has authority to waive any of the provisions thereof. 152 Mass. 272; 76 Wis. 450; 45 Mo. App. 426; 14 Daly 38; 106 Pac. 328; 71 S. E. 130; 127 N. W. 768; 109 N. W. 158; 80 Ark. 419; 104 Me. 355; 149 Mich. 467.

*J. T. Coston,* for appellee.

1. Appellant waived all other grounds of forfeiture when it denied liability on the sole ground of false answers in the application. 3 Cooley, Ins. Briefs, 2680; 97 N. W. 681; 60 N. W. 448; 51 N. W. 989; 67 Ark. 588.

2. The testimony tends to show that the policy was delivered to Hall in person; yet, if it was delivered to Dixon, the clerk of the camp, as a matter of convenience, such delivery was a delivery to Hall. 1 Cooley's Briefs, 450; 93 N. W. 704; 87 N. W. 905. If it be true, as contended by appellant, that Hall was never obligated and initiated, yet he was treated as a member by the acceptance of his money, the issuance to him of the policy, the collection of the first month's assessment, and by allowing the widow to make proof of death, issuing to her an official receipt which on its face confessed him to be a member, and then denying liability on other grounds entirely. The obligation, etc., was waived. 87 N. W. 904; 62 Ark. 353; 113 S. W. 54; 50 N. W. 1023; 42 Pac. 635.

A subordinate lodge may waive a forfeiture resulting from a violation of the society's bylaws. 3 Cooley's Briefs, 2495. The Supreme Lodge is presumed to know all the facts affecting the validity of the policy, and it is too late now to raise the question that Hall did not pay his first month's assessment, or that he was not duly initiated, or that his policy was illegal. 58 Pac. 597; 120 Pa. 533.

3. The fact that deceased was in the saloon business and that he drank liquor was well known in the community and to the physician who wrote out his application and his answers. His business and drinking habits was called to the attention of the local lodge and discussed. Appellant can not now complain. 65 Ark. 62; 3 Cooley, 2645.

FRAUENTHAL, J. This is an action instituted by Etta May Hall to recover upon a certificate of insurance which she alleged was executed upon the life of her husband, and in which she is named as beneficiary. The appellant is a mutual benefit association, and it resisted recovery upon the ground that the alleged certificate was not executed and delivered in accordance with the constitution and by-laws of the order, and, for that reason, never became effective as a contract; and also because the assured had, in his application for the insurance and in his medical examination, made false warranties, which avoided the certificate in the event it had been duly executed and become effective. The order consisted of a supreme body, known as the Sovereign Camp, which issues certificates of insurance, and of numerous subordinate camps or lodges, one of which is located at Fisher. On April 8, 1910, C. H. Hall, the husband of appellee, made written application for membership in the order and for the issuance of a certificate of insurance. In accordance with the constitution and bylaws of the order, his application was balloted upon by the local camp or lodge at Fisher, and was approved. Thereafter, a medical examination was made of the applicant by the camp physician. In the written application he stated:

"My occupation is farmer. * * * I am neither, directly or indirectly, engaged in any of the following prohibited occupations: * * * saloonkeeper, bartender, nor engaged in retailing of intoxicating liquors as a beverage, nor employed in making, compounding, distilling, rectifying, or brewing of malt, spirituous, vinous, or intoxicating liquors, or in the business of distributing or delivering of the same."

In his medical examination, he made the following answers to the following questions: "Do you now use wines, spirits, or malt liquors?" to which he answered, "No." "Were you ever intoxicated?" to which he answered, "No."

In the application he warranted the truth of these statements made both in the application and in the medical examination, and agreed that the liability of the sovereign camp for the payment of benefits should not begin until after the application and medical examination had been duly approved and accepted and certificate issued and personally delivered to him while in good health, "and until I shall have been

obligated in due form and all the requirements of section 58 of the constitution of said order have been complied with.'' Section 58 of the constitution provides that the liability of the sovereign camp for the payment of benefits on the death of a member shall not begin until after his application shall have been accepted and certificate issued and he shall have "first paid all entrance fees; second, paid one or more advance monthly payments of assessments and dues known as sovereign camp fund, also signed his certificate and acceptance slip attached thereto; third, paid the physician for medical examination; fourth, been obligated or introduced by the camp or by an authorized deputy in due form; fifth, had delivered to him in person his beneficiary certificate while in good health.''

In the certificate sued on it was provided that the articles of incorporation, the constitution and laws of the order, the application for membership, and the medical examination should constitute the contract between the order and the member. It also provided that it was issued in consideration of the representations, warranties, and agreements made by the applicant, and that there should be no liability under the certificate until all of the requirements named in said section 58 of the constitution should be complied with. One of the articles of the constitution and bylaws provided that saloonkeepers, bartenders, and persons engaged in the retailing of intoxicating liquors should not be admitted to the order. Another article provided that "no officer, employee, or agent of the sovereign camp, or of any camp, has the power, right, or authority to waive any of the conditions upon which the beneficiary certificates are issued, or to change, vary, or waive any of the provisions of this constitution, or of these bylaws.''

The application and medical examination were thereafter forwarded to appellant at its home office at Omaha, Nebraska, and the certificate of insurance was executed by appellant's supreme officers on April 18, 1910, and sent by mail to the clerk of the local camp at Fisher, but the exact date of its receipt by him does not appear from the testimony. It does, however, appear that the clerk of the local camp retained the certificate in his possession until some time in July, 1910, when he mailed it to appellee. The appellant, C. H. Hall, died on June 1, 1910. There is a conflict in the testimony as

to whether or not he signed the certificate and acceptance slip attached thereto as provided by the laws of the order and the certificate; and there is also a conflict in the testimony as to whether or not he paid the first or any monthly advance payment of assessment and dues as required by such constitution and the certificate. The clerk of the local camp testified that on June 3, 1910, and after the death and funeral of said Hall, his brother came to him and signed the name of C. H. Hall to the certificate and acceptance slip and at the same time paid to him a monthly assessment, for which he executed a receipt, and at the suggestion of the said brother antedated said receipt to May 31, 1910. It is earnestly insisted by counsel for appellant that this testimony shows conclusively that the certificate was never delivered to and accepted by said Hall in his lifetime, and that no payment of assessment and dues was made prior to his death. It is urged on that account that, under the terms of the certificate and laws of the order, no contract of insurance was executed and no liability was incurred by the sovereign camp. We are of the opinion, however, that the testimony of the appellee that the signature attached to the certificate was that of her husband was some evidence that the certificate was delivered to and accepted by Hall prior to his death, and that the jury might have inferred therefrom that it was thereafter left by him in the custody of the clerk of the camp for safe-keeping. We are also of the opinion that the fact that the receipt for the payment of the monthly assessment was dated May 31, 1910, was some evidence from which the jury were warranted in finding that the assessment was actually paid at that time, and therefore prior to Hall's death. On this issue, however, the court instructed the jury that it was the duty of said Hall to pay the assessment on or before the 1st day of June, 1910, and that if they found from the evidence that said Hall, in person or through another for him, did not make payment of such assessment on or before June 1, 1910, then and in that event he was suspended, and they should find for defendant "unless you further find that such payment of said assessment was made to and received by Red Oak Camp No. 34, subsequent to said June 1, 1910, which payment would be binding upon

defendant, and in which event you should find for plaintiff on this issue." This instruction, we think, was erroneous.

The rule, we think, is well settled that a person wishing to become a member of a mutual benefit society is supposed to have made himself acquainted with the constitution and by-laws of the order and to know the limitations on the powers of its lodge officers and subordinate bodies which are contained in said constitution and by-laws. 1 Bacon on Benefit Societies and Life Insurance, § 157. It has been held, it is true, that the relation of the subordinate lodges to the supreme body of a benefit society is regarded in some transactions as that of agency, and that the general rules of agency in such matters apply to agents of all kinds of insurance companies— mutual benefit associations as well as stock companies. 3 Cooley's Briefs on Law of Insurance, 2495. But it is well settled by the weight of authority that the officers and subordinate lodges of a mutual benefit association have no authority to waive the provisions of its bylaws and constitution which relate to the substance of the contract between the applicant and the association.

In the case of *Borgraefe* v. *Knights of Honor*, 22 Mo. App. 127, in speaking of the character of the agency and the extent of the authority of the subordinate lodges of a mutual benefit order, Judge Thompson said: "The subordinate lodges are no doubt the agents of the supreme lodge in dealings with the members for many purposes, and in those cases where the subordinate lodges act through their ministerial officers, and where the latter act in conformity with the rules governing the lodges and the order, these officers may become *pro hac vice* the agents of the subordinate lodges, But it is not shown to us that these officers are anywhere endowed with power to set aside the rules of the order. or that the subordinate lodges are endowed with such a faculty. On the other hand, it is perceived, by the provisions of the laws of the order above quoted, that no grand lodge has power even to alter or amend the laws governing the subordinate lodges. The doctrine of waiver, which is often appealed to to prevent forfeitures in the case of policies of insurance, has no application to the forfeitures of membership in these orders. The

laws and rules governing the different branches of such an order are in the nature of contracts among all the members."

See also, to the same effect, 1 Bacon on Benefit Societies and Life Insurance, § 147; 3 Cooley's Briefs on the Law of Insurance, 2496; *McCoy* v. *Roman Catholic Ins. Co.*, 152 Mass. 272; *Sweet* v. *Citizens Relief Society*, 78 Mo. 541; *Royal Highlanders* v. *Scovell*, 66 Neb. 213.

It has been repeatedly held that the constitution and by-laws of a fraternal and beneficial society become a part of the contract of the applicant, and this is especially so where the application, signed by him, as in the case at bar, provides that it, as well as the constitution and bylaws, shall form the basis and a part of the contract of insurance.    This principle has been approved by this court in the cases of *Woodmen of the World* v. *Jackson*, 80 Ark. 419, and *Supreme Lodge K. & L. of H.* v. *Johnson*, 81 Ark. 512.    The result of these holdings is that compliance with the essential terms of the constitution and bylaws of a fraternal association is a necessary prerequisite to a valid and binding contract of insurance.    In the case at bar the constitution and bylaws of the order expressly provided that the liability of appellant should not begin until one or more advance monthly payments of assessment had been made by the applicant.    It was also provided that no one engaged in the occupation of a saloonkeeper, bartender, or in the retailing of intoxicating liquors as a beverage, should be permitted to become a member of the order or to obtain insurance in this order.    These requirements not only related to the substance, but were the very basis of the contract of insurance issued by this association.    By one of the laws of the order it is further provided that no officer of any subordinate camp, and no subordinate camp, had the right or authority to waive any condition or law of the order upon or under which the beneficiary certificates of this order are issued, or to change, vary, or waive any of the provisions of its constitution and bylaws.

Before there could be, therefore, any liability under this contract, it was necessary that it should have been effective and binding prior to the death of Hall.    A payment made after his death could not make such contract effective unless the person receiving it was impowered and authorized to do so

by the body upon whom the liability was attempted to be fixed, and was authorized, therefore, to waive this provision of the constitution. A subordinate lodge of this order did not have the power and authority to do this, under the evidence adduced in this case. *Mutual Life Ins. Co.* v. *Clark*, (Ky.), 71 S. W. 853; *Ormond* v. *Fidelity Life Association*, 96 N. C. 158. And for the same reason we are of the opinion that, before the contract of insurance could be effective and the certificate binding on appellant, it was necessary for the applicant to be obligated or initiated, by a camp or authorized deputy, in due form into the order. This was made a condition precedent to the execution of the contract of insurance. In the case of *Supreme Lodge of K. & L. of H.* v. *Johnson, supra*, it was held that the requirement in a bylaw of a benefit society that an applicant should be initiated before liability for his death should accrue was not only essential to make the contract of insurance binding, but that it could not be waived by the election of such applicant by the subordinate lodge as a member of the order and his election to office in the local lodge.

Appellant asked the court to instruct the jury in substance that if C. H. Hall had not been obligated or initiated into the local camp they should find for the defendant. The constitution and by-laws of the order provided that the clerk of the local camp should not deliver the certificate to the applicant, or receipt for the payment of the monthly advance assessment, until the applicant was duly obligated and initiated in the order. The fact, if it be a fact, that the certificate was delivered to Hall in his lifetime, and that he paid the assessment, was some evidence, we think, from which it could be inferred that he was obligated and initiated into the order. There was evidence on the part of the appellant tending to show that he was not initiated or obligated in the order. This, therefore, made a disputed question of fact which it was the province of the jury to determine under proper instructions. The court should have given the above instruction requested by appellant on this issue.

It is urged by counsel for appellant that the court erred in refusing to give the following instruction: "If you find from the testimony in this case that, at the time Charles Henry Hall made application for membership in the defendant order,

he was engaged in business as a saloonkeeper, bartender, or in the retailing of intoxicating liquors as a beverage, it will be your duty to find for defendant."

In his application Hall stated that he was a farmer, and that he was not engaged, either as a saloonkeeper, bartender, or in the retailing of intoxicating liquors as a beverage, and therein warranted the truth of this statement. The testimony conclusively shows, in fact, it is conceded by the appellee, that at the time he made this application Hall was, and had been for some time prior thereto, engaged in the business of retailing intoxicating liquors as a beverage. As before stated, it was provided by the constitution and bylaws of this order that one engaged in this occupation was not permitted to become a member of the order or to receive insurance. The warranted statement that Hall was not engaged in this occupation was the very basis of the contract and issuance of the certificate of insurance. Neither the subordinate lodge, nor its individual members, were the agents of the appellant with authority to waive any forfeiture of the certificate resulting from the falsity of this warranty. The subordinate lodge and its members did not have the power to waive any warranty made by Hall in his application. (See cases above cited.)

It is urged, however, that the physician who took the medical examination was the agent of the appellant, and knew the falsity of this statement, and on this account the appellant is estopped from forfeiting the policy by reason of this false answer. Reliance for this contention is based upon the case of *Franklin Life Insurance Co.* v. *Galligan*, 71 Ark. 295, where it was held (quoting syllabus) that "knowledge on the part of the examining physician that the answers written down by him in an application for a policy are false estops the insurance company from forfeiting such policy on account of such false answers."

In that case, however, the answers were made in the medical examination and related to the previous health of the applicant. The examining physician to whom the answers were made by the applicant, and who made the certificate to the medical examination, knew that such answers were false. In that case the court held that the physician was the

company's agent in taking the answers made in the medical examination, and that his knowledge, at the time, of the falsity of any statement made therein would be the knowledge of the insurer, estopping it from taking advantage of any false answers in the medical examination to forfeit the policy. It has been held that a medical examiner is regarded as the agent of the company issuing the certificate of insurance for which he makes the medical examination, and that the company will be chargeable with knowledge of information possessed by him contrary to disclosures made in such medical examination by the applicant, but this holding is based upon the ground that the medical examiner is the agent of the insurer in taking the answers in the medical examination and in making certificate thereto. The medical examiner, however, is not the agent of the insurer for anything more than is contained in the medical examination and his certificate thereto, and the insurer can not be charged with any knowledge of information had by him outside of that agency. It has, therefore, been held that "notice to the examiner of anything not called for by his certificate, but which is a part of the application filled out by the solicitor, is not notice to the company." 3 Cooley's Briefs on the Law of Insurance, 2528; *Leonard* v. *State Mutual Life Ins. Co.,* 24 R. I. 7.

In the case at bar the warranted statement of the applicant that he was not engaged in the occupation of a saloonkeeper, bartender, or in retailing intoxicating liquors as a beverage, is made in the application, and not in the medical examination. This application was signed by the applicant and acted upon by the local lodge some time before the medical examination was made, and it was separate and distinct from the medical examination. The examining physician, as such, had no duty to perform relative to the application, and did not in any manner represent the appellant in making or accepting the application. The application was made solely to the local lodge. The knowledge, therefore, of the examining physician that any statement made in this application was false was not the knowledge of the appellant. His knowledge, therefore, did not estop the appellant from setting up the falsity of this warranted statement in the application to avoid the certificate issued by it thereon.

It is urged that the appellant is not entitled in this action to set up any of the above matters as a defense against the recovery for the reason that when it refused to make payment it based its objection upon a different ground. It appears that proof of death was sent to appellant at Omaha, and that it denied liability and refused to pay upon the sole ground that deceased made a false statement relative to his health. This objection to pay the loss was contained in a letter written by appellant to the clerk of the local camp at Fisher, in January, 1911, which was presumably turned over to appellee, who introduced same in evidence. In that letter appellant stated that Hall made the statement that he did not have a certain disease and had not consulted or been attended by a physician during the past five years, which it learned was false. The letter continued: "It is therefore, the duty of our committee to reject this claim for payment, and you will so notify any parties interested."

It is contended that, because appellant denied liability upon one ground, it can not, when sued, set up as a defense another and different objection to paying the loss. It has been held that an insurance company, when sued upon a policy, can not plead as defenses against recovery any objections to making payment different from or additional to those which it stated when it refused to pay. 2 Bacon on Benefit Societies and Life Insurance, § 437; 3 Cooley's Briefs on the Law of Insurance, 2680. But this doctrine is founded upon the principle that, with a full knowledge of all the facts set up in such further or additional defenses, there was an intention on the part of the insurer to abandon or not to insist upon them; and to permit such defenses to be made would operate as a fraud upon the other party.

The general proposition is well settled that a denial of liability by an insurance company upon one ground may, under certain circumstances, operate as a waiver of some other defenses which it might have interposed. Thus, a denial of liability may waive defects in the proof of loss or excuse the failure to furnish same; or a forfeiture may be waived where the insured has been put to expense and labor in making proof of loss, in reliance on the requirement of the insurer to do so after it has knowledge of facts causing such forfeiture.

In all such cases the doctrine of waiver is but the principle of estoppel. It can not be invoked unless the conduct of the insurer has been such as to induce action or inaction in reliance thereon, and where it would operate to mislead the other party to his injury. *Insurance Co.* v. *Wolff*, 95 U. S. 326; *Wolff* v. *District Grand Lodge*, 102 Mich. 23; *National Life, etc.,* v. *Whitacre*, 15 Ind. App. 506; *Hart* v. *Fraternal Alliance*, 108 Wis. 490.

In the case at bar it does not appear either that the appellant or its supreme officers had any knowledge of the facts set up in the defenses above mentioned and now made by it prior to the time of writing said letter, or that appellee was induced by the objection to paying then made in the letter to act or to refrain from any action which did or could operate to her injury. It follows that the appellant is not deprived of the right to interpose the defenses which it has made in this case.

The appellee, therefore, is not entitled to recover in this case in the event her husband, Charles Henry Hall, the insured, was engaged in the occupation of a saloonkeeper, bartender, or in the retailing of intoxicating liquors as a beverage at the time he made application for membership in the appellant's order. The court therefore erred in refusing to give the instruction to that effect. The judgment must therefore be reversed. The undisputed evidence shows, and it is conceded by the appellee, that the insured, Hall, was engaged in said prohibited occupation at the time he made application for membership in the order and for said certificate of insurance. On this account this case will not be remanded for a new trial, but will be dismissed.