## THE HOMESTEADERS v. STAPP.
### (No. 1291.)

(Court of Civil Appeals of Texas. Amarillo. June 26, 1918. Rehearing Denied Oct. 9, 1918.)

1. INSURANCE ⬅819(2)—FRATERNAL BENEFICIARY ASSOCIATION—HEALTH OF INSURED—EVIDENCE.

In suit on benefit certificate, *held*, on the evidence, that insured, who stated in her application as a warranty that she was in robust health and free from disease, was not then suffering from pellagra.

2. INSURANCE ⬅723(6)—FRATERNAL BENEFICIARY ASSOCIATION — QUESTION AS TO HEALTH—CONSTRUCTION.

A question in application, "Have you consulted or been under the care of a physician any time within the past ten years? (explain fully giving cause of illness, dates and names and address of all physicians consulted)," required applicant to answer only as to consultation for illness.

3. INSURANCE ⬅723(6)—FRATERNAL BENEFICIARY ASSOCIATION—HEALTH OF INSURED—"ILLNESS."

Under question in application for benefit certificate as to whether applicant had been under consultation or care of a physician for any illness, sunburn resulting in peeling of skin was not an "illness"; that meaning more than a temporary and trivial indisposition not substantially impairing the health (citing Words and Phrases, Second Series, Illness).

4. INSURANCE ⬅819(2)—FRATERNAL BENEFICIARY ASSOCIATION—ANSWER AS TO APPLICANT'S HEALTH—QUESTION FOR JURY.

Evidence, in suit on benefit certificate, *held* not sufficient to justify peremptory instruction for defendant on theory that applicant's answer to question whether she had been under care of physician within ten years, and as to cause of illness, physician consulted, etc., was false.

5. INSURANCE ⬅825(2)—FRATERNAL BENEFICIARY ASSOCIATION—STATEMENTS IN APPLICATION—TRUTH—WAIVER OR ESTOPPEL.

Evidence, in action on benefit certificate, *held* to present a question of fact as to waiver or estoppel against a defense based on falsity of statement in application as to health by reason of medical examiner's approval of, and local agent's acceptance and forwarding of application.

6. INSURANCE ⬅825(2)—FRATERNAL BENEFICIARY ASSOCIATION—STATEMENTS IN APPLICATION—GOOD FAITH—EVIDENCE.

Evidence, in suit on benefit certificate, *held* to make a question of fact as to whether applicant in answering question as to her health and consultation with physician did so in good faith.

7. INSURANCE ⬅724(1)—FRATERNAL BENEFICIARY ASSOCIATION—KNOWLEDGE OF AGENT—IMPUTATION TO INSURER.

Knowledge acquired by an association's medical examiner and local agent in the discharge of their duty in connection with the application, and in reporting it to insurer for its information before its final action on application, was to be imputed to insurer.

8. INSURANCE ⬅724(3)—FRATERNAL BENEFICIARY ASSOCIATION—KNOWLEDGE OF AGENT—ESTOPPEL.

If both insured and insurer's examiner and agent knew of falsity of statement in application and insured was not acting in good faith, and if agent acted in collusion with insured, the insured could not claim benefit of an estoppel on account of agent's knowledge.

9. APPEAL AND ERROR ⬅1151(2)—DETERMINATION OF CAUSE—MODIFICATION OF JUDGMENT—INTEREST.

In suit on benefit certificate, where there was no pleading of any contract or facts authorizing entry of judgment bearing interest at 10 per cent. from its date, it would be reformed on appeal to bear 6 per cent. interest from its date and affirmed.

10. APPEAL AND ERROR ⬅733—ASSIGNMENT OF ERROR—JUDGMENT—EXCESSIVENESS.

An assignment that a judgment is excessive is, in so far as excessiveness is concerned, too general to require consideration.

11. APPEAL AND ERROR ⬅719(8)—ASSIGNMENTS OF ERROR—JUDGMENT—FUNDAMENTAL ERROR.

Though an assignment that a judgment is excessive is too general to require consideration, yet, where a judgment includes 10 per cent. interest without any authority therefor, the error is fundamental.

Error from District Court, Hunt County; Wm. Pierson, Judge.

Suit by Hubbard R. Stapp against The Homesteaders. Judgment for plaintiff, and defendant brings error. Judgment reformed and affirmed.

Locke & Locke, of Dallas, and Dinsmore, McMahan & Dinsmore, of Greenville, for plaintiff in error. H. L. Carpenter, of Greenville, and W. E. Sayle, of Commerce, for defendant in error.

BOYCE, J. This suit was brought by Hubbard R. Stapp against The Homesteaders, a fraternal organization, on a benefit certificate issued by such organization in Stapp's favor on the life of his wife. Defendant answered that certain statements, in the nature of warranties, made by the insured in her application for insurance, were untrue, and that the certificate was for this reason not enforceable. The statements referred to were in the form of answers to certain questions propounded to the insured in the application, as follows: "First Are you in strong, robust health and free from disease? Answer: Yes." This question was followed by a number of other questions, many of which were inquiries as to whether the insured had ever had any specifically named disease, following which question No. 6 was propounded, thus:

"Have you consulted or been under the care of a physician any time within the past ten years? (Explain fully giving cause of illness, dates and names and address of all physicians consulted.)"

This question was answered, "No," and immediately following the question and space for the answer the following appeared in the application:

"If any of the above have been answered 'Yes,' explain fully in the following form:

| Disease or Injury | Date | Duration | Was recovery complete | Attending Physician |
|---|---|---|---|---|
|  |  |  |  |  |

It is conceded that these statements became warranties, and it will not be necessary

to set out further provisions of the application and certificate which give them this effect. The plaintiff in error claims that the answers to each of said questions were untrue, in that: First, Mrs. Stapp was, at the time of the application and delivery of the policy, affected with pellagra, a dangerous and fatal disease from which she died within one month from the application; second, that on the day prior to the date of Mrs. Stapp's signing the application she had consulted with a physician, who prescribed for her. These allegations were denied by the plaintiff, who pleaded further in answer thereto that, if they were true the facts were fully known to defendant's agents, accepting the application and delivering the policy, and that any defense on account of the falsity of of such statements was thereby waived.

[1] There are only two assignments; one complaining of the refusal of the court to give a peremptory instruction for the defendant; the other asserting that the judgment is excessive. A brief recital of the facts will be sufficient to ascertain whether they are such as that there was any issue upon which liability on the policy could be based. It appears that on the date of the application, June 9, 1915, Mrs. Stapp, insured, was apparently in good health and physical condition. She was a woman of light complexion and sensitive, tender skin. On the day before the application for insurance was made, she was in a drug store at her home town and casually met and engaged in friendly conversation with Dr. Wheeler, her family physician. In the course of this conversation, she called his attention to the condition of the exposed portions of her arm and neck, which appeared to be sunburned, that is, in a "scaly" condition, with the top skin peeling off in places. In the course of this conversation, Mrs. Stapp told the doctor that on exposure to the sun she had sunburned in this way for several years. This condition, so the doctor says, was not unusual for one of a tender, sensitive skin; but he became suspicious that she had pellagra. It appears from his testimony that exposure to the sun of one suffering with pellagra results in such condition of the skin, which appears to be very much like the ordinary sunburn, but will result much more easily from exposure where such person has pellagra than otherwise. The doctor gave her an ointment which was the usual prescription for sunburn, and also gave her an arsenic preparation, to be taken internally, which he said was a treatment for pellagra, as well as many skin diseases. He did not tell Mrs. Stapp of his suspicions, but left her impression that her condition was merely the result of sunburn undisturbed. On the next day, Dr. Pratt, the medical examiner for the Homesteaders' Order, called at Mrs. Stapp's home and made the medical examination for the insurance, taking her answers to the questions above stated, which she signed.

He testified that he noticed her hands when she signed the application and thereupon questioned her securing the same history of her condition as had Dr. Wheeler. He also testified that during this conversation Mrs. Stapp told him that she had been under treatment of Dr. Wheeler and that she thought she had the pellagra, but the doctor would not tell her whether she had or not. He also testified that he became convinced that she had pellagra and talked with Reeves, the local agent and deputy district manager of the organization, informing him of his conclusion; that he and Reeves talked to Dr. Wheeler about it, who informed them that he had been treating Mrs. Stapp for pellagra for a year and a half.

Notwithstanding these facts, the application for the insurance, approved by Dr. Pratt, and recommended by Reeves, was sent off by Reeves, the agent, and on this application the home office issued the certificate, returned it to Reeves, who delivered it to Mrs. Stapp. Dr. Pratt testified that he intended destroying the application and did not know it came into Reeves' possession. Reeves testified that it was handed to him after the conversation mentioned, with some other applications, and he supposed that Dr. Pratt had become satisfied with the risk, and thus sent it in without further questioning. Dr. Pratt also testified that before the application was sent off he informed Stapp that his wife had pellagra, which was flatly contradicted by Stapp. The jury found, however, that there was no accident, mistake, or misunderstanding either on the part of Pratt or Reeves, in reference to the approval and sending off of said application, and that Dr. Pratt did not tell Stapp that his wife had Pellagra. Mrs. Stapp took an automobile trip with her husband on June 20th and was exposed during the day to the hot sun. Upon arriving at home late in the evening, she ate a quantity of ice cream and cake at a restaurant. She was taken sick that night and remained seriously ill until her death on July 7th. Dr. Wheeler attended her during this time and testified that the bowels were sloughing, resulting in perforation, from which she died. He further testified that this was the result of pellagra, and that she died of this disease. Dr. Morrow, plaintiff's brother-in-law, who lived in another town some distance from plaintiff's home, was called to see Mrs. Stapp before her death. He had known and seen her frequently during the several years preceding her death. He testified that in his opinion she did not have pellagra. The defendant's theory was that Mrs. Stapp had had pellagra for several years; that the trip in the sun and the ice cream supper brought on an acute attack, from which she died. Plaintiff's theory, supported by evidence, was that Mrs. Stapp, on account of a very sensitive skin, was easily sunburned, and that her condition when Dr. Wheeler and Dr. Pratt saw

her, prior to and at the time of signing of the application, was merely the result of a sunburn, caused by being out in an automobile and exposed to the sun a few days before; that her death was the result of the eating of the ice cream and excessive arsenic given in the treatment for pellagra.

It is unnecessary to go into further details. The evidence was, we think, such as that it would have been error for the court to have given the peremptory instruction on the theory that Mrs. Stapp died of pellagra, or that she had such disease at the time of signing the application for insurance. The jury found specifically that Mrs. Stapp was in sound and robust health on June 9th, and that she did not have pellagra. The result of this finding would lead to the conclusion that the condition existing at the time Mrs. Stapp talked with Dr. Wheeler in the drug store was merely the result of ordinary sunburn, and it remains to decide whether this transaction would come within the terms of the question with reference to consulting a physician, as we have stated them.

[2-4] The authorities are quite generally agreed that an inquiry in an application for insurance as to past illness, diseases, and injuries, suffered by the insured, is not to be construed as embracing slight and trivial ailments and injuries, and these authorities are followed by our own decisions. North American Accident Ins. Co. v. Trenton, 99 S. W. 740, writ of error denied, 89 S. W. 276; Cyc. vol. 25, p. 813; note to 18 L. R. A. (N. S.) 362; R. C. L. vol. 14, page 251. As a counterpart of this holding, many authorities hold that:

"In determining what constitutes attendance by or consultation of a physician, consultation or attendance for slight temporary ailments need not be considered." Cooley's Briefs on Law of Insurance, p. 2163; Cyc. vol. 25, p. 816; Ruling Case Law, vol. 14, p. 1074; notes to 18 L. R. A. (N. S.) 362.

Other authorities, however, hold that a general statement as to consultation with a physician is breached though the consultation is for a trivial ailment or injury, leaving no permanent results and not affecting in any way the risk, and the tendency of the decisions of this state seems to be to follow the latter rule. Brock v. United Moderns, 36 Tex. Civ. App. 12, 81 S. W. 340; Security Mutual Life Ins. Co. v. Calvert, 39 Tex. Civ. App. 382, 87 S. W. 889; Flippen v. State Life Ins. Co., 30 Tex. Civ. App. 362, 70 S. W. 787. So that, if there were no limitations on the generality of the question as to the consultation in this case, a very serious question would be presented as to whether the facts would not show a breach of this warranty. It is recognized, however, that the effect of nondisclosure is dependent somewhat on the form of the question. Cooley, p. 2165; Brock v. United Moderns, supra. In the Brock Case, the applicant for insurance had consulted with and been advised by a physician frequently, with reference to gran-

ulated eyelids, within the period of time covered by the questions in the application. One of the questions propounded was, "Have you consulted or been advised by any physician regarding your health within the last five years?" The court expressed some doubt as to whether "the ailment of granulated eyelids is one that would be regarded as affecting the health"; but, in answer to a subsequent question, the applicant stated that he had never been "under the care of a physician," and it was held that the warranty based on the answer to this question was breached under the facts, as already stated. While the question put in this case is general, it is followed by a specific statement as to how the answer shall be made, in that the applicant is told to "explain fully, giving cause of illness, etc." The general question would literally embrace consultations, not only as to all trivial matters concerning the applicant's own physical condition, but as to the health of other members of the family.

So, naturally, without any particularization of the question itself, any reasonable mind would limit the question, at least to consultations for the personal benefit of the applicant, and many respectable authorities go further than this and hold, as we have noted above, that the inquiry is not to be construed as affecting consultations as to trivial ailments that can have no possible effect on the risk. But whether the courts are justified in making such a limitation upon the generality of the question without anything in the policy itself to suggest a limitation, we need not decide. The inquiry here does suggest the limitation, and, reading the question with its direction as to the answer, the applicant could fairly construe it to read, "Have you consulted or been under the care of a physician any time within the past ten years for any illness?" Now, ordinary sunburn, merely resulting in the peeling off of some of the skin of the exposed portions of the arms and neck, could hardly be said to be an illness. "Illness clearly means something more than a temporary indisposition, slight and trivial in its nature, and which does not really affect the soundness of the system, substantially impair the health, materially weaken the vigor of the constitution, or seriously derange the vital functions." Metropolitan Life Ins. Co. v. Brubaker, 78 Kan. 150, 96 Pac. 64, 18 L. R. A. (N. S.) 362, 130 Am. St. Rep. 356, 16 Ann. Cas. 267; Words and Phrases (Second Series) p. 938. Sunburn might possibly be an "injury"; but the application does not contemplate the use of the form in which the words "disease or injury," are used, unless some of the preceding answers shall have been in the affirmative. The application provides that these questions are "to be answered by applicant and recorded by the medical examiner." So that as this particular question No. 6 was put to the applicant it contained no reference to any in-

jury. We conclude therefore that the evidence is not sufficient to have justified a peremptory instruction for the defendant on the theory that the answer to the sixth question, as before stated, was false.

[5-8] We are also of the opinion that the evidence presented a question of fact as to waiver or estoppel that would have rendered improper the giving of a peremptory instruction. According to the testimony of Dr. Pratt, the medical examiner, he ascertained from Mrs. Stapp, at the time of his examination and before the application was sent in, that "she had been taking medicine from Dr. Wheeler"; that he confirmed this information by inquiry of Dr. Wheeler. The evidence will also justify the conclusion that Reeves knew of these facts. Now, it is unquestioned that if the insurer, with knowledge of facts which render the policy voidable, proceeds with the contract and accepts the insured's payments of insurance premiums, he is estopped from setting up such facts in avoidance of liability.* It is not contended that any agents of the home office had any knowledge of these facts, and the inquiry is narrowed down to the ascertainment of whether the knowledge of the medical examiner, Pratt, and the district manager, Reeves, is to be regarded as that of the appellant. The appointment of the medical examiner was made by the Supreme Medical Director, and not by the local organization. Reeves was local secretary, elected by the local organization, and was also district manager; the latter position being held under appointment by the Supreme President. The district manager organized subordinate lodges, or "homesteads" as they were called, and solicited insurance. The medical examiner made examinations of the applicants for insurance secured by the district manager. The making out of the application was participated in by the district manager and by the medical examiner, and it was sent direct to the supreme medical director. If approved, the certificate was then sent to the local organization and delivered through it to the insured. Part I of the application contained certain data as to the age and residence of the insured, beneficiary, etc., was signed by the applicant and also by the district manager, Reeves, recommending the application. Part II of the application contained questions "to be propounded and recorded by medical examiner," and which included the questions we have before referred to. This was also signed by the applicant and witnessed by the medical examiner. Part III of the application was the "confidential report of the examiner, to be written in ink, no third person allowed to be present." This contained many questions as to the health and habits of the insured, and concluded with the following: "If you, yourself, were in the business, would you insure this applicant for life?" This question was an-

swered in the affirmative and the certificate signed by the medical examiner, Pratt. There was still another blank left on the application with this heading: "This space for use of deputy or examiner for any additional information or remarks." It seems that the duties of the district manager were the same as those of the deputy field manager referred to in this last quotation. This latter blank was filled in by a remark made by Reeves, not pertinent here.

It will be seen, therefore, that Reeves in soliciting the insurance and securing and sending in the application, with his recommendation, and Dr. Pratt in making the examination and his own recommendation in connection with the application, were acting for the Grand Lodge and not the local organization. We think that knowledge acquired by them while in the very discharge of their duties in connection with this application, and which it was their duty to report to the principal for its information in finally passing on the application, is to be imputed to the principal. National Fraternity v. Karnes, 24 Tex. Civ. App. 607, 60 S. W. 578, 579; Northwestern Life Insurance Co. v. Findley, 29 Tex. Civ. App. 494, 68 S. W. 695; note to 41 L. R. A. (N. S.) 506–515; R. C. L. vol. 14, p. 1161, par. 343; note to Ann. Cas. 1913A, 850–852; Cooley's Briefs on Insurance, pp. 2524, 2528; Sovereign Camp, Woodmen of the World, 104 Ark. 538, 148 S. W. 526, 141 L. R. A. (N. S.) 517; Supreme Lodge v. Jones, 143 S. W. 251. Of course, if both the insured and the examiner, or solicitor, knew of the falsity of the statement, and the insured was not acting in good faith, the agent having forsaken his duty to his principal• and acted in collusion with its adversary in the trade, the adversary could not then claim the benefit of an estoppel on account of the agent's knowledge. Such was the case discussed in Centennial Mutual Life Ins. Co. v. Parham, 80 Tex. 518, 16 S. W. 316; Modern Woodmen v. Owens, 60 Tex. Civ. App. 398, 130 S. W. 863. But the evidence here is sufficient to have justified the conclusion by the jury that Mrs. Stapp was acting in entire good faith and supposed her answers to be true, and, if the answer that she had not consulted a physician, etc., was untrue, that the medical examiner, Dr. Pratt, and the district manager, Reeves, knew that she had consulted Dr. Wheeler for what Mrs. Stapp supposed to be sunburn, the jury could accept or reject all or any part of the testimony of the witnesses on this matter. The fact that the medical examiner and the district manager were not faithful to their duties to their principal, and failed to report the facts which it was their duty to report, would not avail the principal, unless this dereliction on the part of the agent was in some way participated in by the insured. We do not think the authorities cited by appellant are in conflict with

our conclusion. In the case of Supreme Lodge v. Payne, 101 Tex. 449, 108 S. W. 1160, 15 L. R. A. (N. S.) 1277, the misrepresentation was as to a fact as to which both the insured and the examining physician were mistaken, so that there was no principle of estoppel necessarily involved. In many of the cases, such as Fitzmaurice v. Mutual Life Ins. Co. 84 Tex. 61, 19 S. W. 301, and Hutchinson v. Hartford Life Ins. Co., 39 S. W. 325, the contract expressly provided that "knowledge of the agent of the falsity of the answers should not estop the company," etc. We hold therefore that the evidence is sufficient to present an issue of fact as to whether Mrs. Stapp, in making the answer, did so in good faith, and whether, if there was any falsity in the answer as to having consulted or been under the care of a physician, which would make voidable the policy on account of a breach of the warranty of the truth of such answer, such falsity was known to the examiner, Pratt, and District Manager Reeves. We further hold that in such case the knowledge of the field manager and examiner, and in particular that of the medical examiner, is to be imputed to the appellant,

and that if, under such circumstances, the application was accepted and payment of the premium made, the appellant would be estopped from setting up such facts in avoidance of the certificate. Therefore a peremptory instruction would have been erroneous on account of this issue of fact presented by the pleadings and the evidence.

[9-11] The judgment, in that it is made to bear interest at the rate of 10 per cent. per annum from the date of the rendition thereof, is in such respect erroneous. While the assignment that the judgment is excessive is too general to require the consideration of any question as to excessiveness, unless it be fundamental, we think that the judgment is in this respect fundamentally erroneous, since there is no pleading of any contract or other state of facts as would authorize the entry of such judgment. The second assignment is therefore sustained.

The judgment will be reformed and made to bear 6 per cent. interest per annum from date, and as so reformed will be affirmed.

HUFF, C. J., not sitting, being absent in Austin, serving with Committee of Judges.